# F. H. McCORMICK et al., Appellants, v. ORIENT INSURANCE COMPANY, Respondent.

Insurance — Ownership. — If a policy provides that any interest not absolute must be represented as such, and the interest of the insured is not absolute, but was not represented as such, but, on the contrary, was insured as the absolute ownership of the property, no recovery can be had on the policy.

Contract — Reformation — Ignorance of Contents. — The mere fact that the insured did not know that his policy contained a certain provision is not ground for reformation.

Estoppel — Reliance upon Conduct. — It is an essential element of estoppel by conduct that the party claiming the estoppel should have relied upon the conduct of the other, and was induced by it to do something which he would not otherwise have done.

Id. — Instance — Production of Books, etc. — If an insurance company has a valid defense to a claim upon a policy, but nevertheless requests the insured to produce their books, and the property which escaped damage, and the insured comply with the request, at considerable inconvenience and expense, there is no waiver of the defense or estoppel with respect to it, — it appearing that the contract provided for the taking of such steps, and that the insured would have taken them, anyway.

Appeal from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*John H. Dickinson*, for Appellants.

*William M. Pierson*, for Respondent.

Hayne, C. — The original complaint in this case was to recover two thousand dollars on a policy of insurance. After several years of litigation, the plaintiffs amended their complaint so as to seek a reformation of the policy, on the ground of fraud and mistake, and for a decree upon it as reformed. The trial court gave judgment for the defendant, and the plaintiffs appeal upon the judgment roll, without any bill of exceptions or statement.

The policy contained the following provision: "Any interest in property insured not absolute, or that is less than a perfect title, must be specifically represented to

the company, and expressed in this policy in writing."
There was no indication in the policy that the plaintiffs'
interest was not an absolute interest. On the contrary,
it stated that the plaintiffs were insured "on *their* stock
of manufactured manila paper," etc., and the applica-
tion (which, in our opinion, was made by the agent of
the plaintiffs) stated the same thing. As a matter of fact,
the plaintiffs were not the owners. They merely had the
property for sale on commission, and the defendant did
not "have any knowledge of the same, except in so far
as the same was disclosed and stated in the said applica-
tion for insurance and policy." Upon these facts, it is
plain that the plaintiffs could not recover in an action at
law upon the policy; and it was so held on appeal in a
companion case, the decision in which was, by stipula-
lation, to control this case. (*McCormick* v. *Insurance Co.*,
66 Cal. 362.)

After that decision, the plaintiffs here amended their
complaint so as to make the suit for a reformation of the
policy by the elimination of the clause as to ownership.
The grounds upon which such reformation was sought
were, in substance, that the plaintiffs did not know that
the policy contained the provision as to ownership; that
the defendant represented to them that the insurance
was upon their interest as commission merchants, and
prepared the policy in such a way as to mislead, and with
the intention of misleading; and that plaintiffs did not
read the policy, because of their reliance upon the good
faith of the defendant and its agents. With the excep-
tion, however, of the plaintiff's actual knowledge, which
is immaterial when taken by itself, the truth of these
allegations is completely negatived by the findings,
which, as already stated, have not been attacked. It is
plain, therefore, that the plaintiffs made no case for a
reformation of the policy.

It is contended, however, that the defendant, by its
conduct after the fire, waived the defense in question,

and is estopped from refusing to pay their claim; in other words, that no reformation of the policy was necessary. We hardly think that a party should be allowed to shift his ground so often. (See *Washburn* v. *Insurance Co.*, 114 Mass. 175; *Tredegar* v. *Windus*, L. R. 19 Eq. 607.) But disregarding this, we proceed to inquire whether there was any waiver or estoppel. In strictness, the term "waiver" is used to designate the act, or the consequences of the act, of one side only, while the term "estoppel" (*in pais*) is applicable where the conduct of one side has induced the other to take such a position that he will be injured if the first be permitted to repudiate his acts; but in the law of insurance the terms are ordinarily used indiscriminately. (See May on Insurance, sec. 505.) In this case, we see nothing which would amount to a waiver as distinguished from an estoppel.

The conduct claimed to constitute an estoppel was as follows: After the fire, the agents of the defendant, who then knew of the facts concerning the ownership of the property, requested the plaintiffs to produce their books, together with that portion of the property which had escaped damage, whereupon the plaintiffs, " at considerable inconvenience and labor," produced their books, and, at " considerable expense and labor," produced that portion of the property which had escaped damage, and had the same sorted and weighed. The defendant then offered to pay $1,154.54, which it contended was all the damage covered by the policy, which offer was refused. It is admitted that "both parties acted in good faith up to the commencement of the suit." It is to be observed that there is no question of any conduct of the defendant which induced the plaintiffs to omit anything essential or to do anything prejudicial *to the validity of the policy*, either before or after the loss. There was simply a request to be shown the books, and a request to produce the property not damaged, a compliance with these

requests, and an offer to pay a part of the claim. So far as the request for the books and the production of them are concerned, we do not think that the act is of such a nature that it ought to estop the defendant from relying upon a valid defense. It is not more arduous in character than the making of an affidavit as to the circumstances of the loss; and upon the former appeal, in the companion case, it was held that the making of such an affidavit, followed by the offer to pay a part of the claim, did not operate as an estoppel. (*McCormick* v. *Insurance Co.*, 66 Cal. 364, 365.) That case is not overruled by *Wheaton* v. *Insurance Co.*, 76 Cal. 432, 433, 9 Am. St. Rep. 216, as supposed by the counsel for the plaintiffs. What is said in the latter case concerning the former in this connection relates simply to the power of a general agent to make a waiver under certain conditions, and was put in merely by way of guarding against an unwarranted implication.

Now, the only thing in which the case before us can be argued to be materially different from the case on the other appeal is, that it now appears that the plaintiffs, at "considerable expense and labor," produced that portion of the property which had escaped damage, and had the same sorted and weighed. But we do not think that this worked an estoppel. An essential element of estoppel of this character is, that one party should have relied upon the conduct of the other, and been induced by it to put himself in such a position that he would be injured if the other should be allowed to repudiate his action. (*Biddle Boggs* v. *Mining Company*, 14 Cal. 367, 368.) This essential element does not appear from the findings. It is found that the request was made, and that the plaintiffs subsequently did the things requested. But it is not found that the acts were induced by the request. As a matter of evidence, one might possibly be inferred from the other; but mere inference of that character does not supply the place of a finding. And in this case it

affirmatively appears, from other parts of the record, that no such inference could be drawn, and that the element in question did not exist; for the things which were done by the plaintiffs *were required by the contract to be done.* The plaintiffs were simply complying with their contract; and as their position was that the defendant was liable in an action at law for the full amount of the claim, it is manifest that they would have done the things, anyway.   In view of this, it seems idle to say that they were induced by the conduct of the defendant to incur expense in producing the goods and having them sorted and weighed.   This precise point was decided by the case of *Wheaton* v. *Ins. Co.* 76 Cal. 432, 433; 9 Am. St. Rep. 216.   That case went further than is required here, because there the time to make preliminary proofs had expired, and it was afterwards that the request to make them was made; and the jury found that the insured was put to trouble and expense in complying with the request, and that except for it he would have abandoned the claim.   But it was held that this finding was not justified by the evidence, from which nothing appeared except the request, and the subsequent performance of the acts requested; and the court, per McKinstry, J., said: "His action is to be referred to the contract; his motive, to the necessity of making the proofs as a preliminary to securing the insurance.   After he was requested to make the proofs he had agreed to make, he made them; but the statement that he was induced to make them by the request is only a *post hoc ergo propter hoc.*"

Upon the record before us, we do not see anything to estop the defendant from relying upon the defense referred to, which, as we have seen, was clearly made out. We therefore advise that the judgment be affirmed.

Belcher, C. C., and Vanclief, C., concurred.

The Court.—For the reasons given in the foregoing opinion, the judgment is affirmed.