[Civ. No. 3275. Third Appellate District.—September 22, 1927.]

W. E. BURCH, Respondent, v. HARTFORD FIRE INSURANCE COMPANY (a Corporation), Appellant.

Goodfellow, Eells, Moore & Orrick for Appellant.

M. H. Farrar and J. J. Dunne for Respondent.

PLUMMER, J.—Plaintiff had judgment in the sum of $8,625 upon a certain policy of insurance covering costs of

the production of a crop of barley belonging to the plaintiff and insured by the defendant. From this judgment the defendant appeals.

The transcript shows that on or about the first day of March, 1921, the plaintiff applied to the defendant for insurance in the sum of $20,700 on 1725 acres of wheat and 1724 acres of barley, to wit: $12,075 on the wheat and $8,625 on the barley. Both the wheat and the barley referred to were then .and there seeded and growing upon certain premises situate in the county of Fresno, state of California. The application for insurance upon the seeded wheat crop was set forth in the application as item number one, upon which the premium, calculated at ten per cent, amounted to the sum of $1,207.50. The application for insurance upon the seeded barley crop was and is known as item number two, upon which the premium, calculated at eight per cent, amounted to the sum of $690. The application further set forth in item number two that the insurance was to cover a two-thirds interest in the barley crop and not to exceed $5 per acre. In the calculation of the amount of insurance applied for in the application it appears that the amount of the premium was figured by the applicant as though the barley crop included 1725 acres instead of only 1724 acres. The insurance applied for under the application being considered was for the purpose of insuring the applicant against loss on account of the expenses incurred by him in plowing, seeding, irrigating, threshing, etc., of the crop then being upon the 1724 acres referred to. The schedule of costs filed by the applicant is as follows: Plowing, $2 per acre; harrowing, 40 cents per acre; seed, $1.50 per acre; seeding, 50 cents per acre; irrigating, $1.50 per acre; checking, 60 cents per acre; harvesting, $3 per acre; sacks and hauling, 75 cents per acre; total cost, $10.25 per acre.

The application, among other things, included the following:

"The insurance applied for hereunder is not binding until application is approved by the General Agent at San Francisco and policy is delivered to applicant. I also agree that this application is made with specific reference to the statements and representations above contained, a duplicate of which application is to be attached to my policy of in-

surance issued by the Hartford Fire Insurance Company at Hartford, Connecticut, which, in addition to the printed portion of said policy and endorsements attached, if any, constitute my contract with said Company.''

This application was signed by the plaintiff, W. E. Burch, on March 1, 1921. On the eighteenth day of March, 1921, the defendant issued and delivered to the plaintiff a policy of insurance covering the cost of the barley crop herein referred to, but declining the application of the plaintiff to insure the cost of the wheat crop referred to in the application. This policy contained the following indorsement:

''Endorsement.

''In consideration of $1207.50 return premium, the first item of this policy covering $12,075.00 on 1725 acres of wheat is hereby cancelled leaving in force only $8625.00 covering 2/3rd interest on 1724 acres of barley being 2nd item of this policy, it being understood and agreed that for the purposes of this insurance each item of schedule of costs on barley item is reduced to 5.00/10.25ths of the amounts shown in application. Attached to and made a part of Crop Investment Policy C–2667 issued by the Hartford Fire Insurance Company.

''March 18, 1921.

> ''Dixwell Hewitt,
> ''General Agent.
> ''RG.''

The policy, having this indorsement upon the face thereof, together with a check for the return of $1,207.50 premium on the wheat crop, was sent to the applicant through the mails and appears to have been received by one Taylor, a son-in-law of the plaintiff, and upon the return and receipt of the policy it appears that Taylor stated to the plaintiff that the defendant had refused to insure the cost of the wheat crop and had returned the premium thereon. It does not appear that there was any conversation further in relation to the insurance on the barley crop. The plaintiff testified that he did not read the policy nor the indorsement until after a loss had occurred; that the policy was placed in a safe deposit box belonging to the plaintiff and remained there until the barley crop had become a loss.

By the indorsement upon the policy the insurance is made to cover only 5.00/10.25ths or a fraction less than one-half of the cost of each particular item of loss insured against.

On the part of the plaintiff it is contended that as the loss exceeded the sum of $8,625, plaintiff is entitled to recover said sum, irrespective of the fact that the indorsement purports to cover a fraction less than one-half of each item of expenditure incurred by the plaintiff.

On the part of the defendant it is contended that each item of loss is insured only to the extent of a fraction less than one-half thereof, and that as the plaintiff did not incur a total loss of all of the items insured against, the defendant's liability extends only to the extent of 5.00/10.25ths or a fraction less than one-half of each of the items of loss.

The contention of the plaintiff or respondent is further to the effect that the indorsement on the policy, in so far as it limits the liability of the appellant to a fraction less that one-half of the estimated cost of producing the crop, is void even though the application signed by the appellant limits the insurance applied for to a sum not exceeding $5 per acre, which is a fraction less than one-half the estimated cost of producing the crop. If we accept the indorsement of the policy as a part thereof in the language in which it is written, the insurance, so far as any loss was incurred by the plaintiff, would be covered as follows: Plowing, 98 cents per acre; discing or harrowing, 20 cents per acre; irrigating, 73 cents per acre; seed, 73 cents per acre; seeding, 24 cents per acre; checking, 29 cents per acre. These figures are arrived at by taking 5.00/10.25ths of the estimated cost of each item. The record further shows that 1150 acres of the 1724 acres were not irrigated. Thus, $839.50 of the cost insured against was not incurred at all. By this calculation plaintiff's net loss covered by insurance and which he was entitled to recover amounted to the sum of $4,625.58.

By the complaint filed in this action the plaintiff took the position in the trial court and also contends upon this appeal that the policy of insurance fixes a liability upon the defendant in the sum of $8,625, irrespective of the fact that the insurance is limited to a fraction less than one-half of each item of cost set forth in the schedule filed by the applicant. This, on the theory that the plaintiff's application

for an insurance not exceeding $5 per acre applied for in the application following the schedule of estimated cost, entitled the applicant to an insurance of at least $5 per acre, in the event of loss, irrespective of the items set forth in the schedule insured against constituting such loss, as the indorsement made by the defendant, which we have referred to limiting the amount of recovery to a fraction less than one-half of each item of cost incurred by the plaintiff in the event of loss, was and is invalid as being contrary to the application, and not having been seen by the plaintiff or read by him until after the loss had occurred, is not binding as against him, and that it constitutes no part of the contract of insurance. Had all of the items of cost insured against been incurred by the plaintiff, then and in that case the liability of the defendant under the application made and signed by the plaintiff for insurance and the insurance policy issued by the plaintiff containing the indorsement which we are considering would have been $8,625, and upon which the premium would have amounted to the sum of $690, the actual premium paid by the plaintiff and retained by the defendant. This effectually disposes of the contention on the part of the respondent that defendant had failed to return any part of the insurance premium on the barley, and therefore that the cash loss must now be figured at the rate of $5 per acre, irrespective of the rate of insurance upon the items of loss fixed in the indorsement. There is no pretense that the plaintiff sought an insurance covering the entire amount of the estimated expenses of raising a crop of barley. That was figured at $10.25 per acre, which would bring the cost of raising the crop of barley to between seventeen and eighteen thousand dollars.

As evidencing the meaning of the policy with the indorsement attached that the insurance was not issued with the intent of covering the loss as a whole, but only as to item by item as costs may have been incurred, reference may be had to paragraph number 4 of the insurance policy issued by the defendant, to wit: "This Company will not be liable beyond the actual cash value of the interest of said insured in said insured crops at the time of loss or damage, nor exceeding in any event the respective amounts set opposite the items shown in said application." This language without the indorsement, is clear and specific that the items of

cost were to be covered separately, and in estimating and determining the liability of the defendant in the event of loss, the items of cost set forth in the schedule were to be considered.

Turning again to the application filed by the plaintiff, we find therein an estimated cost of the several items contained in his application of $10.25 per acre, and a statement that insurance was desired in a sum not exceeding $5 per acre, in pursuance of which the company issued its policy based upon the application, and wrote the insurance covering 5.00/10.25ths of each item of cost listed in the schedule, which amounted to exactly $5 per acre. Thus, the application and the indorsement on the policy harmonized exactly, and covered the costs incurred and to be incurred by the plaintiff at the time of the insurance of the exact amount contemplated by the language both of the application and the policy. It may be that the plaintiff did not, at the time of filing his application, understand that the items of cost bore a relation to the insurance applied for by him, and that the items of cost would be covered by an insurance of $5 per acre only in that proportion which each item of cost bore to the insurance to be obtained, but we do not well see the relevancy of setting forth each item of cost specifically and the limiting of insurance to a sum not exceeding $5 per acre, unless it be that insurance was being applied for and it was understood that the company would not issue a policy covering the costs in excess of the rate which each item of cost bore to the total amount of insurance. There is nothing in either the application or the policy indicating that any of the parties contemplated 100 per cent insurance upon any item of loss. If not 100 per cent upon any item, then the only consistent construction which can be given to the application and the policy is that each item of loss is covered just in proportion as the item of cost bears to the insurance applied for and issued.

Many cases have been cited by the respondent dealing with *ex parte* modifications of policies and modification slips and riders issued to be attached to policies after the policy involved has been issued. Nothing of that kind is presented for our consideration by the record in this case. The indorsement was on the face of the policy at the time of its issuance. It was not issued subsequent to the date

of the policy as an attempt to modify the insurance, but the policy was issued with the indorsement as a part and parcel thereof. Many cases have also been cited dealing with the subject of misrepresentation by agents of companies and holding where any vice has entered into a policy under such conditions, the policy may be reformed and oral testimony may be introduced to establish such facts. In the present case there is no pretense of any fraud having been perpetrated upon the plaintiff. What we have said rather shows that it is a case where the plaintiff did not really understand or take the pains to fully acquaint himself with what he should have understood as to the meaning and extent of his own application for insurance. Nor does the record bear out the contention of misrepresentation on the part of one Mr. Smith, the agent for the defendant. The plaintiff's own testimony in this particular is as follows: "On this application of mine I said to Mr. Smith, 'I know nothing about this insurance. This is new to me. I do not know one thing in the world about it, and explain to my clientage what you will pay or the Company will pay if there is a net loss or a total loss of the grain, and that is what I want you to make clear to these men so that they will know what they are doing because I know nothing about it.' And Mr. Smith took my policy and he said, 'If you have a total loss we will pay you dollar for dollar on this policy.' " Again, on cross-examination the plaintiff further testified: "Mr. Smith made that application out and he explained a lot of stuff to my clientage and myself; I cannot tell you about that application no more than what the application is: it is self-evident; and that is all I can tell you about it. Q. Well, the application deals with separate costs, etc., plowing, harrowing, irrigating the land, etc.? A. Mr. Smith took my figures. Q. Well, that is what I am trying to get at. You furnished that? A. Mr. Smith asked how much money we had to expend, and he showed me a book about what we had to put the expenses at. Q. You furnished the figures as to the cost of each one of those steps in the operation of putting in and taking off that barley? A. Mr. Smith took those figures off their schedule." There was some further testimony as to the different items of cost, all showing that the different items were discussed by the plaintiff and Mr. Smith as they were

being placed in the schedule. Had a total loss been incurred by the plaintiff of the items set forth in the schedule, then what Mr. Smith, the agent of the defendant, told the plaintiff would have measured the exact liability of the defendant and would have just equaled the judgment rendered by the trial court in this action, but such was not the case. There was not a total loss of the items insured against. As we have stated, some 1150 acres of the land were not irrigated. No barley was harvested, threshed, sacked, or hauled to market. Hence, we think there is nothing in the contention of respondent that the defendant's agent misrepresented anything to the plaintiff, or that the application of the plaintiff was made or induced by any fraud or misrepresentation of any agent of the defendant. While in this case there was a total loss of the crop, there was not a loss of all of the items insured against, as we have herein shown, and as to the items of loss covered by the insurance to the extent of a fraction less than one-half thereof, it appears from the record that the defendant is willing that the plaintiff may take judgment. The transcript further shows that if the insurance had been issued for the total estimated cost of producing a crop of barley, the premium would have been twice as much.

█ Notwithstanding the fact that the indorsement upon the policy or rider, as it is sometimes called in the briefs of counsel, mentioned the fact that the defendant declined to insure the wheat crop about to be raised by the plaintiff, and was returning the premium, and also mentioned the total insurance upon the 1724 acres of barley which the plaintiff accepted as constituting insurance upon the barley, it is nevertheless contended that the remaining portion of the indorsement or rider is invalid, on the theory that the plaintiff was unaware of the language used therein until after the loss had occurred, and therefore is not bound by the same. We do not very well see how the plaintiff can accept a portion thereof and reject the remainder, as the remainder is consistent with both the application and the policy, as we have heretofore shown. █ However, the rider or indorsement having been made upon the policy prior to its issuance by the company and forwarded to the plaintiff, we think it became and is a part of the contract, if there is any contract in this case, as fully to all intents

and purposes as though read by the plaintiff prior to the date of loss.

In 26 C. J., page 76, section 72, in considering attached slips or matter on the margin of policies, the text-writer uses the following words: ''Provisions may be incorporated into the policy by slips or riders attached thereto. Such slip or rider will be construed in connection with the printed provisions of the policy, and the entire contract harmonized, if possible, but if there is an irreconcilable conflict, the slip or rider will control. In order, however, to form a part of the contract, the slip or rider should be referred to in the body of the policy; it is not a part of the policy merely because it is enclosed in the same envelope in which the policy is sent to insured, or because it is pinned on the policy. A rider endorsed on the standard form of policy containing provisions within the contemplation of the statute permitting such form to be added to or modified, prevails over conflicting provisions in the standard form.'' This text is supported by a great number of authorities cited in footnotes 49, 50, 51, and 52 of the same volume, pages 76 and 77.

The indorsement referred to herein contains, among others, the following words: ''Attached to and made a part of the crop investment policy C–2667 issued by the Hartford Fire Insurance Company.'' That a slip or rider attached to a policy modifying or explaining its provisions will be read into the contract, see, also, volume 1, Cooley's Briefs on the Law of Insurance, p. 642; 14 R. C. L., p. 934; *Scharles* v. *N. Hubbard Junior & Co.*, 74 Misc. Rep. 72, [131 N. Y. Supp. 848]; *Aetna Ins. Co.* v. *Sacramento-Stockton S. S. Co.*, 273 Fed. 55. In 14 Cal. Jur., p. 432, sec. 17, the law relative to modification of insurance contracts is thus stated: ''The modification of a contract of insurance is governed by the rules which are applicable to contracts generally. Unless the contract itself otherwise provides, it cannot be changed without the consent of all the parties, since each has a right to have the agreement remain unaltered and to have it performed. A standard fire policy cannot be modified, changed or added to except by attachment of separate riders before delivery, or afterward, with the consent of the insured.'' The record in this case, as we have stated, shows that the indorsement or rider was attached to the policy

552

before delivery, and as the authorities which we have cited hold, became a part and parcel thereof at the time it was issued by the defendant and received by the plaintiff. The case cited by respondent, holding attempts to modify policies by riders or slips issued after the execution and delivery of the policy, have no bearing upon the case at bar.

The application for insurance in the case at bar was made subject to the approval or rejection by the defendant. Under such circumstances the application is but one of the purposes or steps leading up to a contract of insurance. It requires action on the part of the insurer, to whom the application is made, before a binding contract can be created. In other words, there must be a meeting of minds or a meeting of the mind of the applicant and the insurer. If the insurer, instead of following the application, makes some additions or changes and forwards the policy to the insured, then and in that case a completed contract has not been made until the insured has accepted the same, or by his acts may be held to have accepted the same. (*Fidelity & Casualty Co. of New York* v. *Curtis Brown Co.*, 105 Okl. 136 [232 Pac. 99].) In the opinion in this case we find the following: "It is well settled that acceptance of the application, in order to be good, must be in the very terms offered and otherwise no contract can result." (Citing *First National Bank* v. *Hall*, 101 U. S. 43 [25 L. Ed. 822, see, also, Rose's U. S. Notes]; *Stephens* v. *Capital Ins. Co.*, 87 Iowa, 283 [54 N. W. 139].) An application for insurance, whether or not it is accompanied by payment of a premium, amounts to but a proposal, and does not become a completed contract until it is accepted by the insurer. Until there has been an acceptance of the terms proposed, the meeting of the minds which is necessary to a contract is wanting" (citing authorities). To the same effect: *State ex rel. Equitable Life Assurance Society of U. S.* v. *Robertson* (Mo.), 191 S. W. 989, and cases cited on page 991 of said volume. See, also, *Riordan* v. *Equitable Life Assurance Society of the U. S.*, 31 Idaho, 657 [175 Pac. 586].

Was the policy accepted by the plaintiff? Respondent's contention, as we have shown, is to the effect that the policy was accepted, save and except as to that portion of the indorsement relative to the proportion of the items of cost covered by the insurance. Appellant's contention is

to the effect that the policy, including the whole of the indorsement thereon, was accepted by the respondent, and that the facts and the law so establish in this case, and, likewise, that if such is not the case and the holding to be had herein, then, and in that event, there is no policy and no recovery can be had. The transcript shows that at the time of the receipt of the policy from the company, about March 18, 1921, it bore the indorsement as we have set forth; that accompanying the policy there was returned the sum of $1,207.50 on account of premium on the insurance sought to be obtained by the plaintiff on 1725 acres of growing wheat; that the indorsement set forth the fact that the application for an insurance upon the wheat crop was canceled and the premium thereon was being returned, and then proceeds to set forth the insurance on the barley that was accepted, the interest of the insured therein, and the rate of insurance or amount of insurance on each item of cost set forth in the plaintiff's application covering the 1724 acres of growing barley. The insurance policy was placed in a safe deposit vault belonging to the plaintiff, and there remained until some time the latter part of May of the same year. The returned check was cashed by the plaintiff, and nothing further appears to have been done by the plaintiff in reference to the policy until the loss had occurred. Under such circumstances we think the evidence warrants only one finding, and that is that the policy, with the whole indorsement, was accepted by the plaintiff. We do not very well perceive how it can be found or held that the plaintiff accepted a part of the indorsement and not the whole thereof. In this particular the case of *Blunt* v. *Fidelity & Casualty Co.*, 145 Cal. 268 [104 Am. St. Rep. 34, 67 L. R. A 793, 78 Pac. 729], is in point. There, as in the case at bar, the policy issued differed in some particulars from the application. It was there held that the company was at liberty to insert conditions in the policy differing from what was contained in the application. That under such circumstances the insured, upon receipt of the policy, had the right to reject the same, but that when he received the policy and accepted it without objection, it became binding. That case goes slightly further than the one at bar in that there was a renewal of the policy, the terms of which were disputed. Here, however, the plaintiff knew that the policy

issued by the defendant differed in some of its provisions from his application by the very fact that the premium paid in advance on account of the insurance sought upon the wheat was returned, and yet, in face of this fact and in face of the fact of having cashed the check representing such return premium, his testimony is to the effect that the policy was placed in his safe deposit vault without his having read the same or taken the pains to inform himself as to the contents of the indorsement canceling his application for insurance upon the wheat and setting forth the fact of the return of the premium thereon. In *Kahn* v. *Royal Indemnity Co.*, 39 Cal. App. 180 [178 Pac. 331], where a hearing was denied in the supreme court, we find the following: "Nor is there any merit in the further claim that the provisions of the policy cannot be enforced against plaintiff for the reason that the insured did not read it and was unfamiliar with its provisions. By accepting and retaining the policy without objection, the insured was bound by its terms; and the plaintiff claiming thereunder cannot be heard to state that the insured did not read the policy or any of its provisions." Likewise, it would follow here that the insured, in seeking to enforce the terms of the policy against the defendant, cannot be heard to say, under the circumstances which we have set forth, that he did not read the policy, and therefore is not bound by all of the terms of the indorsement, a portion of which he accepted, and still claim the benefit thereof. In *Capp* v. *National Union Fire Ins. Co.*, 318 Ill. 350 [149 N. E. 247], the rule is thus stated: "Unless the insured has been misled by some act of the insurer, it is generally held that a person who accepts and retains the possession of an insurance policy is bound to know its contents." To the same effect is *Browne* v. *Commercial Assur. Co.*, 30 Cal. App. 547 [158 Pac. 765]; *Bank of Fruitvale* v. *Fidelity Casualty Co.*, 35 Cal. App. 666 [170 Pac. 852]. These cases cite a number of other decisions to the same effect. In *Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204 [142 Pac. 51], the rule followed in this state is set forth as follows: "By accepting and retaining the contract without objection plaintiff was bound by its terms and cannot now be heard to say that he did not read it or know its terms. (*Quinlan* v. *Providence Washington Ins. Co.*, 133 N. Y. 356 [28 Am. St. Rep. 645,

31 N. E'. 31] ; *Cleaver* v. *Traders Co.*, 65 Mich. 527 [8 Am. St. Rep. 908, 32 N. W. 660] ; *Bostwick* v. *Mutual Life Ins. Co.*, 116 Wis. 392 [67 L. R. A. 705, 89 N. W. 538, 92 N. W. 246) ; *Wierengo* v. *American Fire Ins. Co.*, 98 Mich. 621 [57 N. W. 833] ; *McFarland* v. *St. Paul F. & M. Ins. Co.*, 46 Minn. 519 [49 N. W. 253] ; *Reeve* v. *Phoenix Ins. Co.*, 23 La. Ann. 219; *Overton* v. *American Cent. Ins. Co.*, 79 Mo. App. 1; *Johnson* v. *Dakota F. & M. Ins. Co.*, 1 N. D. 167 [45 N. W. 799] ; *Monitor Mut. Fire Ins. Co.* v. *Buffum*, 115 Mass. 343; *Connor* v. *Manchester Assur. Co.*, 130 Fed. 743 [70 L. R. A. 106, 65 C. C. A. 127].) '' See, also, *Fidelity & Casualty Co.* v. *Fresno Flume Co.*, 161 Cal. 466 [37 L. R. A. (N. S.) 322, 119 Pac. 646] ; 14 Cal. Jur., p. 427, sec. 13.

In view of the authorities cited and the facts set forth herein it must be found and held that the plaintiff accepted the policy, including the whole of the indorsement thereon, and that the trial court's finding to the contrary is not supported by the evidence, and that conclusions of law drawn by the court from its findings are erroneous.

As the evidence in this case is without conflict upon all the material points involved therein, and proper findings may be drawn therefrom and a correct judgment entered thereon awarding to the plaintiff the amount to which he is entitled, and this cause terminated without further litigation by this court exercising the authority conferred by the recent constitutional amendment empowering an appellate court so to do, and also in accordance with the provisions of section 956a of the Code of Civil Procedure where trial by jury is not a matter of right, or where trial by jury has been waived, as in this case, it is hereby ordered that finding No. 9 made by the trial court is amended to read as follows: ''It is true that in the event plaintiff's crop of barley became a total loss, then and in that event the plaintiff was entitled to recover the sum of 50/10.25ths of the amount of each and every item of cost incurred in the production of said crop of barley, not exceeding the sum of $8625.00.''

It is further ordered that finding No. 10 be amended to read as follows: ''It is true that plaintiff applied for said policy on or about the 1st day of March, 1921, and that said application thereafter became, and now is a part of said policy. That said application was rejected as to the insur-

ance applied for on the wheat crop mentioned therein, and there was returned to the applicant the sum of $1207.50, leaving in force in said policy the sum of $8625.00 ON 1724 acres of barley in said policy of insurance mentioned, loss, if any, to be calculated at the rate of 5.00/10.25th on each item of expenditure, in the production of said crop of barley, made and incurred by the plaintiff.''

It is further ordered that finding No. 11 be stricken out.

It is further ordered that finding No. 12 be amended to read as follows: ''It is true that it was understood and agreed that for the purposes of said insurance, every item of the schedule of costs mentioned in said application for a policy of insurance on said barley was, by endorsement on the policy prior to its issuance by the defendant and made a part thereof, reduced to the sum of 5.00/10.25ths of the amount shown in the application.''

It is further ordered that finding No. 13 be amended to read as follows: ''It is true that the endorsement placed on said policy was attached to and made a part of said policy of insurance prior to its issuance by the defendant; that said policy was received by the plaintiff with the endorsement thereon canceling his application, as to the insurance upon the growing crop of wheat, applied for by the plaintiff; that a check was returned to the plaintiff by the defendant for the amount of the premium on the wheat policy applied for, to-wit, in the sum of $1207.50; that the plaintiff cashed said check; was aware that his application had been accepted only in part; that said policy was placed in a safe deposit vault belonging to the plaintiff and kept by him from the time of its receipt on or about March 18, 1921, until the latter part of May, 1921, without any objection being made by him to the defendant on account of anything contained in said endorsement.''

It is further ordered that finding No. 14 be amended to read as follows: ''It is true that on or about the 18th day of March, 1921, the sum of $1207.50, part of the total premium upon said policy, was returned to plaintiff by defendant, which said sum of $1207.50 was the return premium upon the first item of said policy covering the sum in the amount aforesaid of $12,075.00 on the aforesaid 1725 acres of wheat, which said item was canceled, as hereinabove found, and at the same time there was forwarded by

the defendant to the plaintiff, and received by the plaintiff, as herein stated, a policy of insurance covering the growing crop of barley in the following words and figures: 'In consideration of $1207.50 return premium, the first item of said policy covering $12,075.00 on 1725 acres of wheat is hereby cancelled leaving in force only $8625.00 covering 2/3rd interest in 1724 acres of barley being 2nd item of this policy, it being understood and agreed that for the purposes of this insurance each item of schedule of costs on barley item is reduced to 5.00/10.25ths of the amounts shown in application. Attached to and made a part of Crop Investment policy C–2667 issued by Hartford Fire Insurance Company.

" 'March 18, 1921.

" 'DIXWELL HEWITT,
" 'General Agent.' "

It is further ordered that finding No. 15 is amended to read as follows: "It is also true that the premium of $690.00, being the 2nd item of said policy covering the aforesaid sum and amount of $8625.00 on the aforesaid 1724 acres of barley in said policy mentioned, was wholly and entirely retained and kept by said defendant, and that no part thereof was ever returned by said defendant to said plaintiff, and that said sum of $690.00 was the correct amount of the premium to be paid by the plaintiff to the defendant for the insurance issued to him by the defendant on account of said 1724 acres of barley."

It is further ordered that finding No. 17 be corrected to read as follows: "It is true that at least 1150 acres of said barley were not irrigated by the plaintiff."

It is further ordered that finding No. 18 be amended to read as follows: "It is true that the total amount of insurance recoverable by said plaintiff does not exceed the sum of $3.17 per acre, being 5.00/10.25ths of the amount set forth in said schedules."

It is further ordered that finding No. 19 be amended to read as follows: "It is true that the amount of the insurance due the plaintiff should be reduced by the failure to irrigate 1150 acres thereof, to the extent of 73c per acre."

It is further ordered that finding No. 20 be amended to read as follows: "It is true that plaintiff's net loss which he

is entitled to recover under the policy of insurance issued by the defendant and accepted by him is as follows: 1724 acres of barley at $3.17 per acre, $5465.08, from which there should be deducted for failure to irrigate, 1150 acres thereof, the insured cost of 73c per acre not incurred by the plaintiff amounting to the sum of $839.50, leaving plaintiff's net loss which he is entitled to recover from the defendant in the sum of $4625.58."

It is further ordered that the conclusions of law drawn by the trial court be amended by striking therefrom the figures representing $8625 wherever said figures occur, and inserting in lieu thereof the figures $4625.58.

It is further ordered that in accordance with the findings in this case as herein amended and the conclusions of law as herein amended, the judgment in favor of the plaintiff be modified by striking therefrom the words "Eight Thousand Six Hundred Twenty Five Dollars" and the figures "$8625.00," and inserting in lieu thereof the words "Four Thousand Six Hundred Twenty-Five and 58/100 Dollars," and the figures "$4625.58, together with legal interest thereon from the 31st day of May, 1921," and as so amended the judgment of the trial court will stand affirmed. The defendant will have and recover its costs on appeal.

Glenn, J., *pro tem.*, and Finch, P. J., concurred.