[Civ. No. 14050. First Dist., Div. Two. June 7, 1949.]

EAGLE INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, CONSTANCE E. ABERNATHY et al., Respondents.

R. P. Wisecarver for Petitioner.

T. Groezinger and Robert Ball for Respondents.

DOOLING, J.—Clarence Abernathy, acting as a pilot for Nat's Air Transportation Service, was, on October 17, 1946, killed in an airplane crash. In addition to his duties as pilot, Abernathy was secretary of Nat's Air Transportation Service, a corporation, but received no remuneration for performance of the secretary's duties. The employer's insurance carrier, petitioner, denies liability on the ground that an endorsement attached to the policy of workmen's compensation insurance excluded Abernathy's death from coverage because of the following language: "It is agreed that, anything in this policy to the contrary notwithstanding, this policy does not insure: As respects (death) sustained by any person having the title of . . . Secretary . . . of this employer, irrespective of the work performed by such person, unless specifically included by statement in the Schedule of Operations of the Declarations or specifically insured by Endorsements attached to this policy." Pilots were included, as a class, in the schedule of operations but petitioner asserts that Abernathy was not "specifically included" therein. We will assume that the words "unless specifically included by statement in the Schedule of Operations" refer to a designation in some manner of the particular person having the title of secretary and that, therefore, Abernathy was not included within the schedule of operations so as to satisfy the provision of the endorsement.

Even though coverage by the terms of the policy was not extended to include Abernathy, the person appointed by petitioner as general agent to effect execution of the policy testified that when the employer sought workmen's compensation insurance it intended to acquire full coverage for Abernathy. The commission, in its decision after rehearing, as a finding of fact, stated: ''The evidence discloses that it was the intent of the employer and the agent . . . of a carrier to procure and to issue a policy of workmen's compensation which would include the executive officers of the corporation while performing such duties as are ordinarily undertaken by a superintendent, foreman or workman. (The restrictive endorsement) as contained in said policy does not conform to the intent of the parties, and said policy should, ought to be, and is reformed so as to strike from said endorsement the paragraph contained (in said endorsement).'' Petitioner contends that the evidence is insufficient to warrant the commission's order that the policy be reformed.

Civil Code, section 3399 states that reformation may be had [''w]hen, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties.'' Reformation in the instant proceeding was apparently based upon the theory that the contract did not accurately express the intent of the parties, through a mistake on the part of the employer to the effect that it had obtained full coverage for executive officers, a mistake which was known or suspected by the petitioner through knowledge admittedly possessed by its agent. Following the express language of the code such a unilateral mistake known or suspected by the other party will support a judgment of reformation. (22 Cal.Jur. 721.) The agent testified that Abernathy was to be covered by the terms of the policy and that pursuant to his understanding with the employer's treasurer ''we were to write up a policy of workmen's compensation . . . covering all employees.''

Petitioner contends that the striking of any portion of the endorsement from the policy is contrary to the evidence because it was shown that the parties intended to attach the endorsement to the policy. An examination of the evidence as set forth above illustrates that at least one party, the employer, had no intention to have executive officers excluded from coverage and it is reasonably inferable therefrom that the employer, when it obtained the policy, operated under

the impression that no endorsement to the policy would exclude coverage which it intended to receive. In reviewing an award rendered by the Industrial Accident Commission it is the duty of this court to indulge in all reasonable inferences to support the commission's finding. (*California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 751 [135 P.2d 158].) Therefore, within the meaning of Civil Code, section 3399, *supra,* there was a mistake of one party and if the party against whom reformation was ordered, the petitioner, knew or suspected that the employer was operating under a mistake the finding concerning reformation must be upheld. Petitioner denies that it knew or suspected that, at the time of the issuance of the policy, the employer desired coverage extended to executive officers.

Petitioner asserts that the knowledge possessed by its agent cannot be imputed to it because the agent was appointed solely for the purpose of signing the contract on petitioner's behalf. The record discloses that the agent received the actual written appointment to execute this policy on May 7, 1946, that he executed it on May 20, 1946, but that he had been petitioner's state agent for 11 years. Further, the agent testified, petitioner requested him to attempt to obtain business for petitioner other than the policy involved herein. The testimony of the agent in none of these respects was refuted or contradicted. Thus, it appears that the person who signed the policy on behalf of petitioner was more than an agent appointed for the sole purpose of executing the policy. Civil Code, section 2332 states: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

The knowledge possessed by the agent who executed the policy on behalf of petitioner is imputable to petitioner even though acquired prior to the time when he was specifically appointed as agent to execute the policy. In *Bogart* v. *George K. Porter Co.*, 193 Cal. 197, 210 [223 P. 959, 31 A.L.R. 1045], the following rule is enunciated: " ' [K]nowledge *possessed* by an agent while he occupies that relation and is executing the authority conferred upon him as to matters within the scope of his authority, is notice to his principal, *although such knowledge may have been acquired before the agency was created,* if it appears that such knowledge was present in his mind at the time he acted for the principal.' (*Cooke* v. *Mes-*

*mer,* 164 Cal. 332, 338 [128 P. 917] ; *Christie* v. *Sherwood,* 113 Cal. 526, 530 [45 P. 820].) ''

In *Hanlon* v. *Western Loan & Bldg. Co.,* 46 Cal.App.2d 580 [116 P.2d 465], where, as in the instant case, the agent admitted that he possessed the knowledge, attempted to be imputed to the principal, at the time he acted on behalf of the principal, the court held that knowledge acquired by the agent prior to the time he acted on behalf of the principal was imputable to the latter. Thus, petitioner is chargeable with that knowledge possessed by its agent, and the theory upon which reformation was presumably based, i. e., unilateral mistake of one party known or suspected by the other party, had sufficient evidentiary support.

 Petitioner argues that the burden rested upon the employer to read the policy and its endorsements and then, if it discovered that it had not received that insurance which it requested and desired, to request that petitioner attach an additional endorsement to the policy insuring executive officers. In this connection petitioner cites *McCormick* v. *Orient Insurance Co.,* 86 Cal. 260 [24 P. 1003], and *Madsen* v. *Maryland Casualty Co.,* 168 Cal. 204 [142 P. 51]. In the McCormick case the court simply stated that the facts upon which reformation of an insurance policy was sought were not supported by the findings and that no attack had been made on the findings. In the Madsen case a soliciting agent for the defendant carrier solicited insurance from plaintiff, a deaf person, filled in the warranties of the application for the policy and stated, knowing the statement to be false, that plaintiff was not deaf. Plaintiff did not sign the application but kept the policy, issued in conformity with the application, in his possession for six years after which time he was involved in an accident and attempted to enforce the policy. Relief was denied and the court held that '' '[b]y accepting and retaining the contract without objection plaintiff was bound by its terms and cannot now be heard to say that he did not read it or know its terms.' '' In *Golden Gate Motor T. Co.* v. *Great American Indem. Co.,* 6 Cal.2d 439 [58 P.2d 374], the plaintiff instituted suit against defendant carrier on the ground that the latter had not issued policies of insurance extending to plaintiff the coverage desired. Defendant relied upon the Madsen case, *supra,* but the court disposed of it and a companion case (*Burch* v. *Hartford Fire Ins. Co.,* 85 Cal.App. 542 [259 P. 1108]) through the following language, at pages 443-445:

" 'Those cases involved statements made by the insured in the written applications. In neither one did it appear that there was no written application and that after the insured had made a request for full coverage the insurer delivered a document which it represented covered the demand as made. If defendant contends that the plaintiff may not recover because it did not read the policy, such contention may not be sustained.' . . . 'It must be presumed, ordinarily, that persons are familiar with the terms of written contracts to which they are parties, and in the absence of fraud they are justly bound by the provisions therein, but the rule should not be strictly applied to insurance policies. It is a matter almost of common knowledge that a very small percentage of policyholders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous—the one before us covering thirteen pages of the transcript—and in their numerous conditions and stipulations furnishing what sometimes may be veritable traps for the unwary. The insured usually confides implicitly in the agent securing the insurance, *and it is only just and equitable that the company should be required to call specifically to the attention of the policyholder such provisions as the one before us.' (Raulet v. Northwestern etc. Ins. Co.,* 157 Cal. 213 [107 P. 292].) . . . 'In *McElroy* v. *British American Assur. Co.,* 94 F. 990, at page 1000 [36 C.C.A. 615], the court said: ''It may be said that the insured should have ascertained the correctness of the policy upon receiving it. . . . The insured had a right to rely upon the agent's performing his duty of making the contract in conformity with the information given; and the agent's failure to do so, whether the result of a mistake or of a deliberate fraud, cannot operate to the prejudice of the insured.'' ' ''

For the same reasons that the doctrine stated in *Madsen* v. *Maryland Cas. Co.* was inapplicable in *Motor T. Co.* v. *Great American Indem. Co., supra,* it is inapplicable in the principal case, since the employer made no warranties in an application and relied solely upon the agent to procure for it the coverage desired.

In conclusion, petitioner urges that it was not chargeable with knowledge possessed by its agent due to the following provision of the policy: ''No condition or provision of

this Policy shall be waived or altered except by endorsement hereon . . .; nor shall notice to any agent, nor shall knowledge possessed by any agent . . . be held to effect a waiver or change in any part of this contract." In this connection petitioner cites *Fidelity etc. Co.* v. *Fresno Flume etc. Co.*, 161 Cal. 466 [119 P. 646, 37 L.R.A.N.S. 322], a case holding that, where the policy of insurance provided that no condition could be altered by an agent without written consent of the company, a *local* agent of the company could not effect a waiver unless the company consent thereto in writing. (*Cf., Arnold* v. *American Insurance Co.*, 148 Cal. 660, 668 [84 P. 182, 25 L.R.A.N.S. 6]; *Bank of Anderson* v. *Home Ins. Co.*, 14 Cal.App. 208, 214 [111 P. 507]; and *Mayfield* v. *Fidelity & Casualty Co.*, 16 Cal.App.2d 611 [61 P.2d 83], all of which hold that a *general* agent has the power to effect a waiver notwithstanding a provision to the contrary in the policy.) Since the instant proceeding involves the question of whether knowledge acquired by a general agent is imputable to his principal, the authority cited by petitioner is not controlling.

In *United Zinc Cos.* v. *General Acc. Assur. Corp.*, 144 Mo. App. 380 [128 S.W. 836], precisely the same language as herein questioned, i. e., "nor shall notice to any agent, nor shall knowledge possessed by any agent . . . be held to effect a waiver or change in any part of this contract," was held to be unreasonable. In *Schuler* v. *Metropolitan Life Ins. Co.*, 191 Mo.App. 52 [176 S.W. 274], the court said:

"The knowledge of the local agents who negotiated the contract is the knowledge of the company. (Citations.) And this is so even in the face of a contrary provision in the application or policy. *James* v. *Mutual Reserve Fund Life Ass'n.*, 148 Mo. 1, loc. cit. 10, 49 S.W. 978."

In *Prudential Ins. Co.* v. *Saxe*, 134 F.2d 16 (certiorari denied, 319 U.S. 745 [63 S.Ct. 1033, 87 L.Ed. 1701]) the following was stated:

"It should be . . . held (that the insurance company had notice), regardless of the provision that (the agent) had no power 'to bind the Company by . . . accepting any . . . information.' *National Life Ins. Co.* v. *Grady*, 1923, 185 N.C. 348, 117 S.E. 289; *cf. New York Life Ins. Co.* v. *Eggleston*, 1878, 96 U.S. 572, 577, 24 L.Ed. 841. If this were legally effective, there would be no way in which the company could acquire knowledge or be given notice of facts adverse to its interest. The only way such facts could be made legally effective against it would be by an endorsement of waiver on

the policy by one of the officers authorized to do this. Until that should be done, it could not be regarded in law as even knowing of the matter. Such a result would be absurd on its face. While a corporation may, within limits, bound the authority of officers and agents to make contracts, waivers or representations, whether promissory or of fact, it cannot disable itself entirely to receive information or notice of facts affecting its interests, as the clause depriving all agents of such power attempts to do. Otherwise it would become an incorporeal being, not only 'invisible, intangible, existing only in the *contemplation* of the law,' but one legally deaf and blind as well. There is no such legal creature.''

This seems to be the only tenable view and to hold otherwise would allow the carrier, which drew the policy, to prevent reformation of the policy even though its agent failed to procure for the insured the type of coverage desired and even though the insured operated under the misconception that the policy which it had obtained extended to it the coverage the agent knew it expected. Therefore, reformation as ordered by the commission was proper on the theory that the employer had made a mistake known, through imputation of the agent's knowledge, to the petitioner and the award must therefore be affirmed.

Petitioner argues that the commission by ordering reformation of the policy created a new contract for the parties. Of course, reformation cannot be ordered so as to create a new and different contract for the parties (22 Cal.Jur. 710) but where, as here, the case falls within the language of Civil Code, section 3399, ''[w]hen, through . . . a mistake of one party, which the other . . . knew or suspected, a written contract does not truly express the intention of the parties . . .'' the contract which was intended by the party acting under unilateral mistake known or suspected by the other, is, as a matter of law, the contract of the parties. (*Bank of America* v. *Granger,* 115 Cal.App. 210, 220 [1 P.2d 479].) Petitioner cites *Zurich Gen. Acc. etc. Ins. Co.* v. *Stadelman,* 208 Cal. 151 [280 P. 687], to the effect that the employer, in order to receive the coverage desired, was obligated to take the action required by the policy, and having failed to do so, cannot be granted coverage other than is allowed by the terms of the policy. The Zurich case, however, was not an action for reformation and the employer made no claim that the policy as written did not conform to the contract as in-

tended. The authority therefore has no application to the instant proceeding.

Award affirmed.

Nourse, P. J., and Goodell, J., concurred.