[Civ. No. 7370.   Fourth Dist.   Aug. 17, 1965.]

LARRY ANTHONY MODICA, Plaintiff and Respondent, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY et al., Defendants and Appellants.

---

*Assigned by the Chairman of the Judicial Council.

Jacobs, Jacobs, Nelson & Witmer and M. Lyle Nelson for Defendants and Appellants.

Harwood, Heffernan, Soden & Corfman and Mark A. Soden for Plaintiff and Respondent.

WHELAN, J.—On September 17, 1958, plaintiff was the owner of two shoe repair shops located in leased premises, one of which was on Lido Isle in the City of Newport Beach, and the larger of which was at Corona Del Mar. A fire broke out on the premises of the Corona Del Mar shop on September 17 and, after a certain amount of damage, was extinguished or considered to be extinguished. Another outbreak of fire occurred on September 18 and did extensive damage not only to the premises of the shoe repair shop of the plaintiff, his equipment and property of customers in the shop, but also to the remainder of the building in which the shop was situated and to personal property of other tenants of the building. As a result of the claimed negligence of the plaintiff, either in the starting or spreading of the fire, he was named defendant in three separate actions, one of which was brought by the landlord for damage to the building including the portion thereof occupied by the plaintiff, the

others by two other tenants of the building for damage to their personal property.

At the time of the fires plaintiff held two policies of insurance, one of which was the kind known as "owners', landlords' and tenants'" (OTS) issued on July 20, 1958, by defendant Hartford Accident and Indemnity Company, the other of which was a fire insurance policy (fire policy) issued by defendant Hartford Fire Insurance Company on June 20, 1955. Both policies had been written by the defendant John E. Sadleir, as the agent of both insurers. As their agent, Sadleir had authority to bind the insurers orally. The defendant Hartford Fire Insurance Company Group is a corporation under which the two insurers and other affiliated insurance companies have carried on all or part of their business since a date later than 1958.

The OTS policy, as written, agreed to indemnify plaintiff against legal liability for personal injuries in connection with the operation of the business and the business premises at both locations. The fire policy insured plaintiff against damage from loss by fire to his fixtures, equipment and property of customers in his possession at both business locations.

After having been served with process in the lawsuits brought against him, plaintiff demanded that the defendant insurers defend the actions on his behalf, which the insurers refused to do, saying that the claimed bases of liability in the three actions were the result of hazards not insured against. A type of insurance which would have protected plaintiff against liability to the landlord was "fire-legal liability"; the type of insurance which would have protected him against liability for damage to the property of the other tenants was "property damage" coverage.

Because of the insurers' refusal to furnish representation to the plaintiff and their denial of coverage, plaintiff has brought the present action to effect a reformation of one or both of the policies upon the grounds of mutual mistake, unilateral mistake on his part known or suspected by the defendants, negligence on the part of the insurers, and fraud. The trial court, sitting without a jury, found that the policies issued to plaintiff were intended by him and believed by him to cover the risks not expressed in the policies as written; that this mistake on the part of plaintiff was known to or suspected by the defendant insurers and their agent Sadleir; that there was not any fraud on the part of the defend-

ants or their agent; that the affirmative defenses asserted of negligence on the part of the plaintiff and of laches and estoppel are not available to the defendants; that the premium rate for property damage insurance for $10,000 each accident and $20,000 aggregate is the sum of $7.50 per year; and the premium rate for fire-legal liability insurance in the amount of $20,000 coverage is $25 per year.

The court concluded and the judgment provided that the contract be reformed to include coverages for property damage liability of $10,000 for each accident and $20,000 aggregate; and for fire-legal liability in the amount of $20,000; that the insurers are obligated to defend plaintiff in the three actions brought against him; and that defendant insurers should pay any judgment to the extent of the coverage of the policies as reformed.

In arriving at the amount of coverage, the trial court, in denying a motion for new trial, indicated that it intended to take the amount of insurance for which the premium in the case of property damage was $7.50 per year, and for which, in the case of fire-legal liability, the premium was $25 per year.

The printed form of the OTS policy contained language affording property damage coverage if indicated by filling in blanks in another part, which in fact were not filled in. In addition to such coverage, the OTS policy might have been written also to cover fire-legal liability insurance. The fire insurance policy likewise might have been written to cover fire-legal liability. The fire policy could not have been written to cover the property damage insurance. The court, in making its findings, treated the two policies as one and did not attempt to say in which of the two the fire-legal liability should have been included.

Plaintiff first started out in the shoe repair business in 1948 in Corona Del Mar, working by himself. Thereafter his business expanded so that the shop in Corona Del Mar had been moved from its first location and he had the one-man second shop on Lido Isle and employed as many as eight or nine persons. He had not attended school beyond the fourth grade and his prior business experience was working in his father's shoe repair shop. He had also been in the Navy and had had some National Service Life Insurance, which was the only insurance with which he had become acquainted before he went into business. The defendant Sadleir wrote the first insurance affecting plaintiff's business and over the interven-

ing period also wrote insurance covering plaintiff's automobiles, his home and workmen's compensation. Sadleir chose the companies in which the different types of insurance were written and had shifted some of the business from one company to another without consultation with plaintiff, who did not pay any heed to the companies with which his insurance was written and did not read the policies. He believed that he would not have understood their meaning and significance if he had read them. From the beginning of their business relations, Sadleir had covered plaintiff's business operation against loss by fire to plaintiff's own property and the property of his customers, and against liability for personal injuries to others, although plaintiff, when he ordered the first policy, told Sadleir ''to cover me for business'' and from time to time instructed Sadleir to keep plaintiff fully covered.

In February 1957 a competing insurance broker solicited plaintiff's insurance business and asked Sadleir to furnish a list of plaintiff's policies, which Sadleir did by a letter dated February 21, 1957, to plaintiff in which defendant Sadleir wrote in part as follows: ''I have kept close check on your insurance needs and feel that you have good coverage and in the very best insurance companies. The above policies together with the Personal Comprehensive Liability you carry through another company, through another insurance agency, should complete your insurance picture.''

Upon receipt of the list the competing broker pointed out that plaintiff had only $5,000 fire insurance and no property damage insurance. Plaintiff passed that information on to Sadleir, who told plaintiff to go back to his shop and figure out how much insurance he would need and Sadleir would see that he was covered. The plaintiff then prepared an estimate on all his equipment and approximately how much customers' goods he had on hand and took this back to Sadleir. Defendant Sadleir stated that he guessed the plaintiff would take away his insurance business and the plaintiff stated: ''No, Jack, as long as you are keeping me covered, we are still friends.'' The defendant then said, ''I will see that you are covered,'' that as to property damage he would have to talk to another man from Hartford and would get the figures together and call plaintiff and for the plaintiff not to worry about it, ''You are covered.'' Shortly thereafter, plaintiff received a bill for an increase in premium on his insurance from Sadleir.

Later in 1957 a fire occurred at the plaintiff's Lido Isle

shop which caused mostly smoke damage, although the ceiling, walls and floor were scorched and one of the windows was broken by the firemen. The cost of the repair to the building was paid by "Hartford." Plaintiff did not, following that fire, make any changes in his insurance. Up to the time of the fires in 1958, he relied on Sadleir to write all insurance for his needs in the business. Plaintiff had left to the discretion of Sadleir the amount of property damage coverage he desired at the time that he pointed out to Sadleir that there was only $5,000 fire insurance and no property damage. Plaintiff did not specifically instruct Sadleir to write property damage insurance for him. Plaintiff did not, when Sadleir first delivered the insurance policies to him in 1948, make any request for an explanation of the nature of the coverage; he only requested Sadleir to cover the business in case of "anything."

After the fires in September of 1958, Sadleir, in the presence of three other persons, told plaintiff not to worry, that he was fully covered; specifically in the presence of the witness Orsatti who made a claim against plaintiff for property damage arising from the fire, Sadleir stated that plaintiff was covered for Mr. Orsatti's damage and that he had nothing to worry aboout; about two weeks after the fire plaintiff told Sadleir that a fellow was suing him and Sadleir told plaintiff that he worried too much, that he had nothing to worry about, that he was fully covered. There was testimony of other similar statements made by Sadleir following the fires, two of which were made in the presence of the landlord. About two months after the fires occurred, plaintiff asked Sadleir to increase the fire insurance limits on his two shops, without making specific mention of insurance against liability for property damage or "fire-legal liability."

The plaintiff did not determine for himself the amount of his various insurance coverages but accepted the amounts advised by Sadleir.

That plaintiff relied upon Sadleir's knowledge as an insurance agent concerning insurance matters was known to Sadleir.

Property damage insurance would not be written by the Hartford Accident and Indemnity Company unless bodily injury insurance also were written. Both property damage and fire-legal liability insurance would be recommended coverages by a well-informed agent for a small business located upon leased premises.

It is the custom among agents in the area in which plaintiff did business to write property damage in connection with liability, bodily injury, and not to write one without the other when writing insurance for a small business; and where the business is carried on in leased premises, the custom and usage is to write fire-legal liability insurance. In writing fire-legal liability insurance, a factor to be considered is the value of the building in which the insured's business is carried on; and in determining the amount of coverage for the property damage, factors to be considered are the physical exposures at the premises, that is to say, the character of the occupancies adjacent to the premises in which the business is carried on; the minimum limit of property damage liability written by the Hartford Group is $5,000 each accident, subject to a $25,000 aggregate during the year; there is no minimum or maximum of fire-legal liability; it is up to the agent to determine the amount of the exposure before suggesting the amount of coverage; fire-legal liability coverage for a $50,000 building would not cost over $25 per year; the premium rate for such insurance is related to the premium rate for direct fire insurance on the building in which the insured's business is carried on, and is about 25 per cent thereof; the premium on the minimum amount of property damage added to the OTS policy would be $7.50 annually; in 1950, 50 per cent of OTS policies such as that issued to plaintiff were issued without property damage; in 1958, 20 per cent of such policies were issued without property damage.

There are, of course, conflicts and inconsistencies in the evidence which have been resolved by the trial court.

Defendants argue that there was no agreement for property damage liability coverage or fire-legal liability coverage; that the amount of such coverage could not be determined, and as fixed by the court is without support in the evidence; that there was no testimony as to the value of the building in which the 1958 fire occurred or the fire insurance rate on that building; and that reformation is barred by the plaintiff's failure to examine his insurance policies over a period of 10 years.

The first objection goes to the weight and sufficiency of the evidence. The evidence is ample that from the time of the fire at the Lido Isle shop in 1957, the plaintiff intended and believed that the insurance furnished by him should and did

cover him from the hazard of loss for damage to the landlord's property. While the defendants argue that the losses paid and the damage suffered in connection with the Lido Isle fire were covered by the fire insurance policy as actually written, the testimony is subject to the inference that the damage paid for was damage in part to the leased premises rather than to the plaintiff's own personal property. ██ The payment of claims under such circumstances is evidence that may be considered as bearing upon the question of the intent of the parties. (*Cantlay* v. *Olds & Stoller Inter-Exchange*, 119 Cal.App. 605, 609 [7 P.2d 395].) The evidence is also sufficient to support the court's inference that after February 1957 plaintiff believed and intended that his insurance should and did protect him against liability for damage to property. The defendant Sadleir testified that he was aware at all times that plaintiff's insurance as written did not cover either of the risks under discussion. Concerning this it may be said, disregarding the conflicts in the evidence, that statements made by Sadleir could be said reasonably to indicate his knowledge of plaintiff's intention to be, and his belief that he was, covered against such risks.

The court's finding that plaintiff is one whose mistake was known or suspected by the other party entitles plaintiff to a reformation, under Civil Code, section 3399, if the missing provisions of the contract can be determined.

██ In revising a written instrument, the court may inquire what the instrument was intended to mean and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be. (Civ. Code § 3401; *Abroms* v. *New York Life Ins. Co.*, 53 Cal.App.2d 764, 770 [128 P.2d 391].)

██ An insurance policy may be reformed to show the premises intended to be covered (*Maier Brewing Co.* v. *Pacific Nat. Fire Ins. Co.*, 218 Cal.App.2d 869 [33 Cal.Rptr. 67]; *Payne* v. *California Union Fire Ins. Co.*, 129 Cal.App. 582 [19 P.2d 40]); the persons included in the coverage (*Eagle Indem. Co.* v. *Industrial Acc. Com.*, 92 Cal.App.2d 222 [206 P.2d 877]; *Beach* v. *United States Fid. & Guar. Co.*, 205 Cal.App.2d 409 [23 Cal.Rptr. 73]); the name and capacity of the insured (*Bankers Indem. Ins. Co.* v. *Industrial Acc. Com.*, 4 Cal.2d 89 [47 P.2d 719]); the nature of the coverage (*Cantlay* v. *Olds & Stoller Inter-Exchange, supra*, 119 Cal.App. 605); and its extent (*Owen* v. *American etc. Co. of N.Y.*, 153 F.Supp. 928); and the amount payable

under the policy (*Mutual Life Ins. Co. of N. Y.* v. *Simon,* 151 F.Supp. 408).

■ Since plaintiff did not make a written application for specific coverage, his failure to read the policies in effect at the time of the 1958 fire does not prevent the reformation of the contract. (*Maier Brewing Co.* v. *Pacific Nat. Fire Ins. Co., supra,* 218 Cal.App.2d 869, 876; *Payne* v. *California Union Fire Ins. Co.,* 129 Cal.App. 582, 586 [19 P.2d 40].) The case of *Taff* v. *Atlas Assur. Co.,* 58 Cal.App.2d 696 [137 P.2d 483], relied upon by defendants, is distinguished in that respect from the case at bench, as well as by the fact that in that case the trial court had decided in favor of the insurance carrier. In that case, the insured made written application for a policy, in which he was definite and positive as to the particular type of policy he preferred. Such cases are distinguished from those cases in which no such written application is made. (*Golden Gate Motor Transport Co.* v. *Great American Indem. Co.,* 6 Cal.2d 439, 443 [58 P.2d 374] ; *Eagle Indem. Co.* v. *Industrial Acc. Com.,* 92 Cal.App.2d 222, 227 [206 P.2d 877].)

As to fire-legal liability, while the premium of $25, found by the court to be the correct premium for $20,000 coverage, would not perhaps be an improper figure, the amount of the coverage has been selected arbitrarily. Defendants argue correctly that there is no evidence as to the value of the building which housed plaintiff's Corona Del Mar business.

The court was in error in its finding XIII that the premium rate on property damage insurance was $7.50 for limits of $10,000 and $20,000. The evidence was that $7.50 was the premium for the minimum coverage of $5,000, each accident, $25,000 aggregate, as applied to both business premises.

The missing factors are the amount of the coverage as to each of the two risks. We do not doubt that reformation may be had notwithstanding the absence of agreement by the parties as to the specific amounts of such coverages, if such amounts under the evidence are reasonably determinable.

The defendants could not well object if the court had fixed the coverage at the minimums; but that was not done.

■ It would be reasonable to say in the circumstances that the amounts of the coverage under the policies as reformed would be the amounts that an experienced, well-informed agent in the same business community as the plaintiff and who had knowledge of all of the facts involved would reasonably and in good faith recommend to a client whom he

wished to retain. The facts, of course, would be those that existed prior to the 1958 fires.

It is further true that defendants should be entitled to an offset for the amount of the applicable premiums (*Maier Brewing Co. v. Pacific Nat. Fire Ins. Co., supra*, 218 Cal.App.2d 869, 872). It is proper that such premiums should be chargeable from the date in 1957 when the policy limits were increased following the discussion about property damage insurance.

The judgment is affirmed as to all matters except the amounts of coverage and of premiums. As to those matters the judgment is reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed. Each party shall bear its own costs on this appeal.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied September 10, 1965.