[S. F. No. 13176. In Bank.—March 12, 1930.]

A. FORISTIERE, Appellant, v. AETNA INSURANCE COMPANY, etc. (a Corporation), Respondent.

A. FORISTIERE, Appellant, v. THE CALIFORNIA IN-SURANCE COMPANY OF SAN FRANCISCO (a Corporation), Respondent.

George G. Graham for Appellant.

R. G. Retallick and Orrick, Palmer & Dahlquist for Respondents.

PRESTON, J.—Action in *assumpsit* on a policy of insurance for a loss by fire. Judgment for defendant. Plaintiff appeals. Two causes are presented on one record. Both policies are of the standard form. The facts in each case are identical except as to the name of the defendant and the amount of insurance, together with an immaterial difference as to the date of the beginning of the period of insurance. We shall, therefore, deal with the facts of but one cause.

One Catania owned four adjoining city lots in Fresno upon which was situated an olive oil factory with fixed and movable machinery therein. Certain buildings thereon were also used for mercantile and residence purposes. Two of the lots were mortgaged to the Bank of Italy. On August 6, 1924, foreclosure proceedings were instituted. On October 22, 1925, judgment in foreclosure was entered and a sale of the property ordered. On November 18, 1925, the bank purchased the property at the sheriff's sale. Prior to sale on November 6, 1925, defendant issued to Catania, as owner, its policy of insurance, not to exceed five thousand dollars, against loss by fire, upon said buildings, said machinery and said merchandise, the term to be one year from and after September 1, 1925. The policy recited: "It is understood and agreed that the within described property is mortgaged without prejudice to this insurance."

On March 1, 1926, Catania executed and delivered to the plaintiff a quitclaim deed conveying the four lots. No bill of sale or written transfer was made of the movable machinery. On April 15, 1926, Catania assigned said policy of insurance to plaintiff by indorsing on the policy the usual written recital as to the transfer of ownership of the property and the assignment for value received of all interest in the policy subject to the terms and conditions therein mentioned. Beneath the above assignment appeared the following:

"The ownership of the property herein insured having actually passed to A. Foristiere this Company hereby consents that the interest of Santa Catania in the within policy, subject to all the terms and conditions herein mentioned and referred to, be assigned to A. Foristiere.

"April 27, 1926.

"Madison-Yurk Co.
"By D. J. Yurk, Agent."

On July 9, 1926, the buildings and their contents were destroyed by fire. On October 5, 1926, plaintiff redeemed said property from said sale. Due proofs of loss were made, followed by this suit. Touching the foreclosure proceedings and the sale thereunder, as recited above, the court found: " . . . all of which was done without the knowledge of the defendant herein and that no redemption of said property so sold was made until on or about October 5th, 1926."

■ Touching the knowledge of the defendant respecting the title and condition of the property on April 27, 1926, at the time of the assent to the assignment of the policy, the court made no finding. But the evidence is such that had a finding been made upon this issue, it would have been that defendant knew or had imputed knowledge of the exact condition of the title. Both Catania and plaintiff testified positively that they discussed it frequently with Mr. Yurk, the agent of defendant in the matter, and told him of the foreclosure proceeding and sale thereunder.

The agent admits applications by plaintiff and Catania for a loan through him as broker to lift the mortgage, and also admits that foreclosure proceedings were threatened, but he testified: "I had assumed right along that Mr. Foristiere had just come to Mr. Catania's rescue and settled the

thing before they ever got a foreclosure." This must be held sufficient to have charged the defendant with knowledge of the condition of the title on April 27, 1926, at least of all the facts shown by the records of the court respecting said mortgage and sale. (*Sharp* v. *Scottish Union etc. Co.,* 136 Cal. 542, 545 [69 Pac. 253, 615]; *Raulet* v. *Northwestern etc. Ins. Co.,* 157 Cal. 213, 228 [107 Pac. 292]; *Kavanaugh* v. *Franklin Fire Ins. Co.,* 185 Cal. 307, 314 [197 Pac. 99].) Whether knowledge of the existence of the mortgage alone would impute knowledge of the records of the court as of the day the policy was issued to defendant need not be determined (see authorities last above cited), as we are of the mind that such knowledge on April 27, at the time of the consent to the transfer, creates an estoppel against the defendant as to the two points relied upon by it to sustain the judgment of the court below.

These points are: First, that the record shows that at the time of the loss the title was in the Bank of Italy by virtue of the sale under foreclosure; hence neither plaintiff nor Catania was the sole and unconditional owner of the property as required by this and all other standard forms of policy; hence the policy was void or at least suspended at the time of the loss by fire. The second point is that from any standpoint plaintiff cannot maintain the action because, as the court found, Catania, in fact, never had transferred said property to plaintiff, the effect of the finding in this behalf being that it was a conveyance as security and not a sale of the property.

As above indicated, it is our view that defendant, by the written consent given, estopped itself to assert either of these contentions. It stood by and allowed the rights of plaintiff to accrue without an objection and without a cancellation of the policy or a rebate upon the premium paid. With full knowledge of the facts, actual or imputed, and especially with knowledge that the policy was void, at its option, it executed its consent to the assignment, thus allowing both Catania and plaintiff to alter their positions to their prejudice in the event that it should assert such defense.

Invalidity of the policy could not be claimed because the interest of Catania was not that of "unconditional and sole ownership." Such provisions speak only of the date

of issuance, and this requirement existed on that day. Neither could invalidity be asserted because of foreclosure proceedings commenced, or notice of sale by virtue of a mortgage or trust deed for these provisions relate to matter arising subsequent to the issuance of the policy. At most, this contention comes under the head of "Matters Suspending Insurance," for example, subdivision g: "While the interest in, title to or possession of the subject of insurance is changed excepting: (1) by the death of the insured; (2) a change of occupancy of building without material increase of hazard; and (3) transfer by one or more several copartners or coowners to the others."

Respondent reduces its position largely to a reliance upon *Breedlove* v. *Norwich etc. Ins. Soc.*, 124 Cal. 164 [56 Pac. 770], which contains a discussion of the effect of a sale under foreclosure and the location of the title during the period of redemption. It must be admitted that such cause is authority for the proposition that the owner of a mere right of redemption from a sale under foreclosure is not the sole and unconditional owner of the property involved. (See, also, *Pollard* v. *Harlow*, 138 Cal. 390 [71 Pac. 454, 648]; 11 Cal. Jur. 127.) But this pronouncement does not control the question before us.

The real question is: May an insurer waive the suspension of the policy due to a foreclosure or execution sale? The above cited cause is express authority for an answer in the affirmative, for in that case the owner of the equity of redemption, with only eighteen days left to redeem, collected full value of buildings on the property destroyed by fire during said period upon the ground that the local agent knew of the condition of the title at the time the policy was issued. In this case, too, the redemption from the foreclosure sale was never made.

Ample authority for our conclusion may also be found elsewhere. Speaking of a similar situation, the court in *Mortt* v. *Liverpool & London etc. Co.*, 192 N. C. 8 [47 A. L. R. 645, 650, 133 S. E. 337], said: "Defendant, with knowledge that the entire policy was void on June 19, 1924, consented to its assignment to plaintiff, and retained the unearned portion of the premium. It cannot be supposed that defendant consented to the assignment of a policy which it knew to be void, and retained the unearned portion of the

premium on a policy under which it had no liability to the assignee, the owner of the property insured by the policy.'' Citing *Forward* v. *Continental Ins. Co.*, 142 N. Y. 387 [25 L. R. A. 637, 37 N. E. 615]. See, also, 12 R. C. L., p. 1195, sec. 372. The rule is stated in 5 Cooley's Briefs on Insurance, second edition, p. 4313, as follows: ''By consenting to an assignment of a policy with knowledge of facts violating the terms of the policy, an insurance company waives the invalidity of the policy.''

What has been said applies as well to the contention that the quitclaim deed under which plaintiff claimed ownership was in reality a mortgage and not a conveyance. Defendant is clearly estopped by its own act in certifying to the contrary with knowledge or presumed knowledge of the existing facts. As against the claim of respondent, the deed must be held sufficient to pass title to the property involved. In addition to the authorities cited above the case of *Clark* v. *Svea Fire Ins. Co.*, 102 Cal. 252 [36 Pac. 587], seems to be in point. The syllabus correctly states the holding, as follows: ''Where the property insured by a fire insurance company has been transferred by an assignment duly approved by the insurance company, the company cannot show, as a defense to an action upon the policy, that the property was transferred for the purpose of defrauding the creditors of the party originally insured.''

These views require a reversal of both judgments and it is so ordered.

Curtis, J., Richards, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices present concurred.