[S. F. No. 15547.   In Bank.—May 26, 1936.]

GOLDEN GATE MOTOR TRANSPORT COMPANY (a Corporation), Respondent, v. GREAT AMERICAN INDEMNITY COMPANY (a Corporation), Appellant.

Hadsell, Sweet, Ingalls & Lamb for Appellant.

Cooley, Crowley & Supple as *Amici Curiae* on Behalf of Appellant.

Johnson & Harmon for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, First Appellate District, Division Two. Upon further consideration we are satisfied that the opinion of Mr. Justice Sturtevant correctly determines the issues, and we hereby adopt it as part of the opinion of this court. The opinion reads as follows:

"This is an appeal by the defendant from a judgment rendered in favor of plaintiff in an action to recover on an insurance policy.

"The plaintiff is a corporation engaged in the transportation business. In California and Nevada it owns or operates from fifteen to twenty trucks, trailers, and automobiles. Prior to the 1st of July, 1930, it had insured each piece of its equipment. The insurance was written in three different policies. Each was pleaded *in haec verba* by the plaintiff and they are designated in the record as plaintiff's exhibits 1, 2 and 3. In the early part of the year 1930 the plaintiff sold to Paul Colburn a car spoken of by the witnesses as a Hudson sedan. The sale was in the form of a conditional sales contract enumerating certain deferred payments. Before the 1st of May, 1930, all payments had been made. The registration certificate was delivered to Colburn on July 1, 1930. Mr. G. T. McNeely was the secretary-treasurer of the plaintiff corporation. Mrs. Adams, his daughter, was an employee of the Great American Insurance Company, hereinafter called the insurance company. In May or June of 1930 Mr. McNeely delivered to Mrs. Adams the policies above mentioned and asked her to inquire of her employer if it would be willing to take over the business and give to the plaintiff policies providing the same complete coverage as plaintiff's 1, 2 and 3, which were about to expire. Mrs. Adams took the policies and exhibited them to Mr. Benner, assistant manager of the insurance company, and repeated to him the inquiry made by Mr. McNeely. After examining the documents Mr. Benner expressed a hesitation on compensation, that is, as we understand it, he hesitated on liability for employer's compensation liability. Thereupon, seated at Mr. Benner's desk, Mrs. Adams called up Mr. McNeely and after certain conversations were had Mr. Benner stated that he would send a representative to the plaintiff to discuss the business. At that time and for some time previous thereto the insurance com-

pany had in its employment Miss Nielund, who was, as we understand the record, an expert in framing and writing insurance policies. A little later, Mr. Benner directed Miss Nielund and Mrs. Adams to call on Mr. McNeely and discuss the business tendered by Mr. McNeely. When they arrived at his office, with the old policies before them, Mr. McNeely explained the change in ownership of the Hudson sedan and they discussed what changes were to be made in the policies. Miss Nielund told him her company could and would handle the business. She also stated that the Hudson sedan could be put in a nonownership policy and that such policy would be so written. After leaving the plaintiff's premises Miss Nielund telephoned to Mr. Kemper, superintendent of the casualty department of the Great American Indemnity Company, hereinafter called the indemnity company. Thereafter three new policies were written which the plaintiff pleaded *in haec verba* and which are numbered plaintiff's exhibits 5, 6 and 7. A comparison of the documents shows that the Hudson sedan was covered by plaintiff's 1 and 3. It was not covered by plaintiff's 5 and 6, and as will presently appear, the sole question presented by this litigation is whether it was covered by plaintiff's 7. After the new policies were written all were delivered, the premiums were paid and are still retained. The new policies were so delivered some time in June. As we understand the record, Mrs. Adams delivered them in person. Be that as it may, the record is clear from the time Mr. McNeely had his conversation with Miss Nielund the plaintiff was not advised by anyone representing either the insurance company or the indemnity company that the policies contained anything to the effect that the policies did not give to the plaintiff the full coverage for which it had contracted. No written application was requested or was executed. No inquiries except as we have stated were made by the defendant, neither is there any claim that at any time or at all the plaintiff made any misrepresentation. A short time after plaintiff's 5, 6 and 7 had taken effect Colburn drove the Hudson sedan into San Francisco. While there that car was stolen and while in the hands of the thief it met with a collision. When asked by the plaintiff to take over the litigation the defendant refused and thereafter this action was commenced.

■ "The defendant contends that the complaint does not state a cause of action. Except as will hereinafter be noted it is not claimed that it did not contain every allegation necessary to recover on an insurance policy. Plaintiff's exhibit 7 does not specifically designate any automobile but specifies the owners by name, the risks assumed, and the premium charged for each risk. One of its provisions is: 'Exclusions . . . (c) This policy does not cover . . . (6) For any automobile and/or motorcycle registered in the name of the named assured. . . . ' The plaintiff did not allege that the Hudson sedan was registered in the name of Colburn (the employee using it), nor that it was not registered in the name of the plaintiff. Pointing to the absence of those allegations the defendant makes its attack. No duty rested on plaintiff to insert any allegation on the subject. (*Cowan* v. *Phenix Insurance Co.*, 78 Cal. 181, 185 [20 Pac. 408].) As stated above, there is no claim that this plaintiff made any misrepresentations, hence *Goorberg* v. *Western Assurance Co.*, 150 Cal. 510 [89 Pac. 130, 119 Am. St. Rep. 246, 11 Ann. Cas. 801, 10 L. R. A. (N. S.) 876], is not in point. (14 Cal. Jur. 498, 499.) ■ If the defendant claimed a breach of contract by the plaintiff that subject was a matter of defense. (*Raulet* v. *Northwestern etc. Ins. Co.*, 157 Cal. 213, 235 [107 Pac. 292].) In its complaint the plaintiff did set forth certain allegations which were in the nature of anticipating a defense, but by doing so it did not render its complaint, which was otherwise sufficient, subject to a general demurrer. (*Kansaburo Ohsaki* v. *Ahern,* 61 Cal. App. 787 [215 Pac. 714].)

■ "It is next asserted that the plaintiff having accepted and retained the policy is charged with knowledge of its terms, is bound by it, and is estopped from asserting that it did not know the terms of the policy. It cites and relies on *Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204 [142 Pac. 51], and *Burch* v. *Hartford Fire Ins. Co.*, 85 Cal. App. 542 [259 Pac. 1108]. Those cases involved statements made by the insured in their written applications. In neither one did it appear that there was no written application and that after the insured had made a request for full coverage the insurer delivered a document which it represented covered the demand as made. If defendant contends that the plaintiff may

not recover because it did not read the policy, such contention may not be sustained. In *Raulet* v. *Northwestern etc. Ins. Co.*, 157 Cal. 213, at page 229 [107 Pac. 292], the court said:

" 'There was no written application for the insurance, and, as we have seen, no actual fraud and no intentional misrepresentation by plaintiff. She was ignorant of this provision in the policy, which was secured by her agent, and no inquiry was made by the company as to the existence of any chattel mortgage.

" 'It must be presumed, ordinarily, that persons are familiar with the terms of written contracts to which they are parties, and in the absence of fraud they are justly bound by the provisions therein, but the rule should not be strictly applied to insurance policies. It is a matter almost of common knowledge that a very small percentage of policyholders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous—the one before us covering thirteen pages of the transcript—and in their numerous conditions and stipulations furnishing what sometimes may be veritable traps ·for the unwary. The insured usually confides implicitly in the agent securing the insurance, *and it is only just and equitable that the company should be required to call specifically to the attention of the policyholder such provisions as the one before us.*

" 'The courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent. *The defendant should either have made inquiries in reference to the chattel mortgage, required a written application covering by question and answer all the material provisions of the policy, or have consulted the records in the recorder's office where it would have been apprized of the encumbrance.*

" 'Considering the nature of the contract and the relation of the parties, there should be no difficulty in reaching the conclusion that this provision was waived and it therefore constitutes no bar to recovery.' (Italics ours.) In *McElroy* v. *British American Assur. Co.*, 94 Fed. 990, at page 1000, the court said: 'It may be said that the insured should have

ascertained the correctness of the policy upon receiving it. Barrington, who acted for the insured in the matter, testified that he did open the policy, and note the company insuring, and the amount of insurance, but nothing more. It would certainly have been an act of prudence on his part to read the entire policy, but his neglect to do so cannot excuse the company for the default of the agent in not writing the contract in accordance with the representations made by the insured. The insured had a right to rely upon the agent's performing his duty of making the contract in conformity with the information given; and the agent's failure to do so, whether the result of a mistake or of a deliberate fraud, cannot operate to the prejudice of the insured.'

■ "It is then asserted that the plaintiff was the owner and registered owner of the Hudson sedan because under the law, as it was in 1930, any attempted transfer was incomplete unless the certificate was registered. (California Vehicle Act of 1929, sec. 45 [e].) If the purchaser, Colburn, were maintaining this action the point might have merit (*Morris* v. *Firemen's Ins. Co.,* 121 Kan. 482 [247 Pac. 852, 52 A. L. R. 696]), because, under the assertion made, he would have no insurable interest. But this action is being maintained by the seller and not the buyer. That this plaintiff formerly owned the Hudson sedan is beyond dispute. If its contract of sale was incomplete it was still the owner when it applied for full coverage. (*Sly* v. *American Indemnity Co.,* 127 Cal. App. 202 [15 Pac. (2d) 522].) As to how that coverage should be written the plaintiff left the matter entirely in the hands of the insurer. ■ Furthermore, whether the plaintiff or Colburn was the legal owner at the time the policy was written we need not decide. Colburn had been, down to that date, operating the Hudson sedan while transacting the business of the plaintiff. There is no evidence that his services were to be terminated. If, during the following year, he continued to serve the plaintiff and operate a motor car owned by himself, in the event of an accident a peril would arise which might damnify the plaintiff and it was entitled to coverage thereon. (*Sharman* v. *Continental Ins. Co.,* 167 Cal. 117, 121 [138 Pac. 708, 52 L. R. A. (N. S.) 670].)

■ "It is claimed that there is no evidence to support findings 3, 4 and 5. They contain findings on the represen-

tations alleged to have been made by the defendant. The attack is two-fold. It is claimed that the persons claimed to have made the representations did not make them. It is also claimed that such persons had no authority to make representations. As to the first claim the most that can be said in favor of the defendant is that the evidence was conflicting. Be that as it may it greatly preponderated in favor of the plaintiff. The old policies on which Miss Nielund made pencil notes strongly support the story as told by the witnesses for the plaintiff. As to the second claim—want of authority —the record is wholly in favor of the plaintiff. In its brief, giving page and line of the record, it says: 'The companies are very similar in name (Great American Insurance Company, New York; Great American Indemnity Company, New York); they are affiliated together; they have offices in the same building and the same telephone number; the appellant writes the casualty end of insurance and the other writes straight insurance.' But what is of more importance all policies are written in those offices. When new business comes into the office of the insurance company it takes out its line and sends to the indemnity company such as falls in its line. When the business falls within a line written by both companies then both companies join in writing it. (See Plaintiff's Exhibit 5.) When the relations between the insurance company and the indemnity company so stood, Mr. Benner, the assistant manager of the former, sent Miss Nielund and Mrs. Adams to take up the subject of the plaintiff's insurance with Mr. McNeely. They did so. Later they reported to Mr. Benner and also to Mr. Kemper, superintendent of the indemnity company. Their reports were accepted and the policies were written. Under these facts we think Miss Nielund and Mrs. Adams had the right to speak for both companies.

■ "The defendant makes the further contention that the plaintiff neither pleaded nor proved facts sufficient in law to establish a waiver. As we have shown above, no duty rested on the plaintiff to plead a waiver of an affirmative warranty. As to the plaintiff's proof we think it may not be said that it was insufficient. There is no conflict in the evidence to the effect that the plaintiff had an insurable interest; that the defendant made no inquiry as to how the registra-

tion of the Hudson sedan stood; that it asked for no written application covering by question and answer the material provisions of the policy; and that it made no examination of the records of the Motor Vehicle Department. Nevertheless it rendered its bill for the premium, collected it, and still retains it. There is not a particle of a claim that the plaintiff made false representations, nor is there any claim that the defendant did in any manner call to the plaintiff's attention the registration clause. Such facts have been held sufficient to establish a waiver. (*Raulet* v. *Northwestern etc. Ins. Co.*, *supra; Sam Wong* v. *Stuyvesant Ins. Co.*, 100 Cal. App. 109 279 Pac. 1050]; 5 Cooley's Briefs on Ins., 4226.) ▮ The only objection which the defendant specifically makes to the proof is that there was no showing that the defendant had actual knowledge as to the registration of the Hudson sedan. But it was not necessary that the plaintiff should show that the defendant had actual knowledge. It was bound both by its actual knowledge and by such knowledge as in law was imputed to it. This is so because the facts which were directly brought to its attention cast on it the duty to inquire into all facts pertinent to the transaction. (5 Cooley's Briefs on Ins., pp. 4204–4249; 14 Cal. Jur. 522; *Sharp* v. *Scottish Union etc. Co.*, 136 Cal. 542, 546, 547 [69 Pac. 253, 615]; *Foristiere* v. *Aetna Ins. Co.*, 209 Cal. 92, 94, 95 [285 Pac. 849].)

▮ "As to the point made that the waiver could only be in writing as provided in the policy, we think it has no merit. As appears from the facts hereinabove recited the business was taken and the policy was written by Mr. Kemper. After he had been advised of the facts by Miss Nielund, later he called on Mr. McNeely, and still later he signed the schedules as the agent of the defendant. Under all of the facts he was clearly a general agent. In *Mackintosh* v. *Agricultural Fire Ins. Co.*, 150 Cal. 440, at page 448 [89 Pac. 102, 119 Am. St. Rep. 234], the court said: 'And as a general rule a subsequent parol waiver by a general agent of conditions in a policy are valid although the policy requires them to be in writing. (Citing cases.) Waivers such as that here made, constituting, as they do, a new contract upon a sufficient consideration, need not be evidenced by a writing, and need not be endorsed on the policy, no matter what limitations or conditions are expressed in the policy, provided always they are made by an

agent who would otherwise have authority to make the contract. (3 Cooley's Briefs, p. 2695.)' "

Defendant contends that the above discussion is in conflict with the case of *Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204 [142 Pac. 51], in holding the company bound under a contract of insurance different from that actually written. They rely upon the general proposition that where, without fraud, or other invalidating cause, a contract of insurance is delivered to and retained by the insured, he will be ·bound by the terms thereof. There is no dispute about the general rule, and the exceptions to it are equally well established. In the instant case, specific coverage was requested for a particular car; the Colburn transaction involving that car was called to the attention of the agent who negotiated for the insurance as the representative of the company; and in the policy itself the name of Paul Colburn appeared. Under these circumstances the company must be held bound to give the protection thus contracted for, and it cannot be permitted to perpetrate what would undoubtedly be a fraud on the insured by relying upon the exclusion clause of the policy. The fact that the premium differs in a non-ownership policy is utterly immaterial. Plaintiff paid the premium charged for the coverage requested, and if by some mistake it was not charged the proper premium, it is no doubt possible to recover the deficiency.

The judgment is affirmed.

Rehearing denied.