259 F.2d 205
 Everett D. IVEY, Appellant,
v.
UNITED NATIONAL INDEMNITY COMPANY, a corporation, National Fire Insurance Company of Hartford, Connecticut, a corporation, and Trans-Continental Insurance Company, a corporation, Appellees.
 No. 15601.
 United States Court of Appeals Ninth Circuit.
 September 9, 1958.
 
 Alexander, Bacon & Mundhenk, W. C. Bacon, Herbert Chamberlin, San Francisco, Cal., for appellant.
 Boyd & Taylor, M. K. Taylor, Frederic G. Nave, San Francisco, Cal., for appellees.
 Before HEALY, POPE and HAMLEY, Circuit Judges.
 POPE, Circuit Judge.
 
 
 1
 The appellant Ivey is a physician and surgeon practicing his profession at Oakland, California. In 1946, and the years following, he purchased tracts of land in Colusa County, California, which he proceeded to develop as locations for duck hunting. He installed gates and other means for controlling the water which he collected on the land and constructed duck blinds and bunk sheds for the use of hunters. This started as a hobby, but by 1953 it had become a business enterprise as he was then charging for the privilege of shooting on his land. He was the sole owner of this business enterprise.
 
 
 2
 Prior to 1953 Dr. Ivey had carried liability insurance with the appellee United National Indemnity Company, a corporation of the State of New York, covering the use of his automobiles. This was extended to cover his home, his office, and some other properties by amendments and additions to the initial automobile policy. His claim, which gives rise to this lawsuit, is that the original automobile liability policy, which was renewed for one year on January 15, 1953, was extended to cover liability for property damage in connection with his duck hunting business. This is denied by the appellee,[1] which brought the action below against Ivey for the purpose of procuring a declaration of non-liability.
 
 
 3
 The occasion for the controversy arose out of the fact that in October, 1953, water from a ditch used in connection with the duck ponds caused flooding and damage to rice crops on the adjoining lands of one Brian. Brian recovered a judgment against Ivey in the sum of $33,000 on account of this damage. Involved here is the insurance company's responsibility for satisfaction of that judgment.
 
 
 4
 Attached to the basic policy, which is entitled "Comprehensive General Automobile Liability Policy", is a rider or endorsement bearing the same date as the policy entitled "Individual As Named Insured (Including Personal Liability Coverage for Named Insured and Family)". The named insured is Dr. Ivey, and included in the so-called "Insuring Agreements" is an undertaking stated as follows: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, and as damages because of injury to or destruction of property, including the loss of use thereof."
 
 
 5
 Appellant claims that the quoted provision was intended to cover the operations of his duck hunting property. The appellee calls attention to certain qualifying language in the endorsement which it says makes it plain that the occurrence relating to the flooding of the Brian lands was not covered. Such was the view of the trial judge who found the company's policy did not provide property damage insurance coverage for the duck hunting property and entered judgment for the appellee.
 
 
 6
 At the trial the appellant introduced the testimony of one Knudsen who was his insurance broker and also an agent writing insurance for the appellee company. This tended to show that in procuring the insurance policy and its endorsements, the broker notified the company that appellant wanted both property damage and bodily injury liability coverage on the duck hunting property; and that he, the broker, understood from the appellee that such coverage was provided by the policy, and that he had so informed the appellant.
 
 
 7
 This testimony of Knudsen was received over the objection of the appellee company and was subsequently stricken on its motion. The appellant contends that the evidence was properly admissible and should have been taken into consideration by the court for two reasons: first, that the policy as written and issued to him was ambiguous; and second, that this evidence tended to prove appellant's claim that the insurance company is estopped to deny that it provided this property damage coverage.
 
 
 8
 The language used in the policy itself and in the endorsement referred to, is so involved and so intricate in its phraseology as to be well calculated to confuse the ordinary reader. The company appears by its choice of phraseology to have cast the policy in words barely escaping unintelligibility. Thus the endorsement contains a provision that it is agreed: "1. The policy does not apply to any business pursuits of an insured, except (a) in connection with the conduct of a business of which the named insured is the sole owner, and (b) activities in such pursuits which are ordinarily incident to non-business pursuits." This seems to say that it does apply to the conduct of a business solely owned by the insured, except that it has no application to those things that are done in the conduct of the business.
 
 
 9
 The insuring agreements, the first of which is quoted above, are proceeded by the following recital:
 
 
 10
 "Except as it applies to the conduct of a business of which the named insured is the sole owner, the policy is amended as follows: * * * 1. Insuring Agreement 1 is replaced by the following:"
 
 
 11
 Insuring agreement No. 1 in the original policy is one which covers (a) bodily injury liability generally; (b) property damage liability arising out of the ownership and use of an automobile; and (c) property damage liability generally. This part of the policy showed that item (c) was not covered. Of course item (b) is not related to anything but liability arising out of use of an automobile; but item (a) covers bodily injury liability generally including that arising out of the conduct of "a business in which the named insured is the sole owner." Obviously the trial court's view was that insuring agreement No. 1 was not replaced by the liability clause including property damage first quoted above.
 
 
 12
 We find it unnecessary for the purposes of this opinion to pass upon this question. In reaching our conclusions here we assume that there is no ambiguity in the terms of the policy, and that a painstaking reading of the policy so shows. The other question raised here still remains: whether in view of the testimony of the insurance broker Knudsen, mentioned above, the appellee is estopped to deny that the policy provided the coverage which Knudsen understood that it did. Of course if proof of the existence of the elements commonly constituting an estoppel would be insufficient as a matter of law to hold the company liable, then the court below properly struck from the record the Knudsen testimony. We proceed to a consideration of that question.
 
 
 13
 A multitude of cases might be cited for the proposition that an insurance company may be estopped to claim a breach of warranty or a breach of condition in an insurance policy. In fact there are many cases to the effect that such defenses may be waived by certain conduct amounting to something less than a technical estoppel. These are generally cases where the insurance companies have relied on a forfeiture of a contract for breach of warranty or of a condition. In such cases if the companies have led the insured to understand that such breaches would not be insisted upon, then the companies have been prohibited from asserting those defenses. In some of those cases this doctrine is called one of estoppel and in others it is referred to as waiver. For a collection of such cases see the note in 113 A.L.R. 857, annotating Washington National Insurance Company v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 166.
 
 
 14
 But as the note just referred to indicates, most of these cases draw a distinction between a claim of estoppel to assert breach of warranty or condition, and a claim of estoppel to prevent the insurance company from maintaining that certain risks are not covered by the policy. The distinction is referred to in the Craddock case, supra, through quotation of 32 C.J. 1317, as follows: "A waiver cannot operate to bring within the terms of the policy a loss which is expressly excepted therefrom or supply a failure of proof that a loss was covered by the policy." See also, 45 C.J.S. Insurance § 674. The language quoted refers to "waiver" but similar language has been used with reference to the claims of estoppel, and many substantial authorities may be found to the effect that neither waiver nor estoppel may operate to extend the scope of the coverage of a written contract of insurance beyond the language actually used in the policy.
 
 
 15
 Whatever may be the rule elsewhere, the California decisions dealing with the problem now presented to us indicate that under the law of that state an insurance company may by its conduct or dealings apart from the policy itself be estopped from denying that coverage has been furnished for a risk which the insured has been led to believe is protected under the policy. In Golden Gate Motor Transport Company v. Great American Indem. Co., 6 Cal. 2d 439, 58 P.2d 374, 376, an automobile liability policy had been issued by the insurance company which provided "Exclusions * * * (c) This policy does not cover * * * (6) for any automobile * * * registered in the name of the named assured." In that case the assured had an employee who was driving the car in question and it wished protection against liability which might be charged to it in case of casualties which occurred while its employee was doing the driving. The automobile was actually registered in the name of the plaintiff company which was named as the assured under the policy, as the employee had only a conditional sales contract for its purchase. The evidence showed that the insurance company knew the sort of protection the assured wanted and also knew that the assured thought that it had the protection requested; nevertheless it issued the policy containing the exclusion clause quoted. When an accident occurred in which the automobile was involved, the insurance company refused to defend and that action ensued. Holding that the assured was entitled to protection against the risk which it had contemplated notwithstanding the exclusion clause, the court said (58 P.2d at page 378): "Defendant contends that the above discussion is in conflict with the case of Madsen v. Maryland Casualty Co., 168 Cal. 204, 142 P. 51, in holding the company bound under a contract of insurance different from that actually written. They rely upon the general proposition that where, without fraud or other invalidating cause, a contract of insurance is delivered to and retained by the insured, he will be bound by the terms thereof. There is no dispute about the general rule, and the exceptions to it are equally well established. In the instant case, specific coverage was requested for a particular car; the Colburn transaction involving that car was called to the attention of the agent who negotiated for the insurance as the representative of the company; and in the policy itself the name of Paul Colburn appeared. Under these circumstances, the company must be held bound to give the protection thus contracted for, and it cannot be permitted to perpetrate what would undoubtedly be a fraud on the insured by relying upon the exclusion clause of the policy. The fact that the premium differs in a nonownership policy is utterly immaterial. Plaintiff paid the premium charged for the coverage requested, and, if by some mistake it was not charged the proper premium, it is no doubt possible to recover the deficiency."
 
 
 16
 It seems plain that in this holding the California court was in effect adopting a rule stated by way of dictum by the Court of Appeals of the State of New York in Draper v. Oswego County Fire Relief Ass'n, 190 N.Y. 12, 82 N.E. 755, 757, where, disagreeing with a named Wisconsin case, that court said: "We are not disposed to go to the length of the learned Supreme Court of Wisconsin but are inclined to the opinion that an insurance company may estop itself from denying that an excepted clause of loss is covered by its policy."
 
 
 17
 In Ames v. Employers Casualty Co., 16 Cal.App.2d 255, 60 P.2d 347, 352, the court, speaking through the same Justice whose opinion was adopted in Golden Gate Motor Transportation Co. v. Great American Indem. Company, supra, again stated the California rule, and in doing so recognized that the California rule was not in accord with that prevailing in some other jurisdictions. The court said (60 P.2d at page 352): "But where, as here, the insurer makes a promise to write a certain specific coverage, the insured is entitled to rely thereon and the insurer is estopped from taking a different position. It will not be claimed that such is the rule in all jurisdictions * * * but it is the rule in many jurisdictions, including this state." It also cited with approval an early decision of this court in McElroy v. British America Assur. Company, 94 F. 990, in accord with the California rule.
 
 
 18
 We are therefore of the opinion that it was open to the appellant in this case to undertake to prove that there were representations made by the insurance company that the insurance he was procuring would cover property damage liability arising out of the operation of the duck hunting business; that he relied thereon in purchasing and procuring the policy, and hence that the insurance company, in the words of the last cited California case, "is estopped from taking a different position."
 
 
 19
 That brings us to the question whether the evidence offered by the appellant and stricken by the court was sufficient, if believed, to make out a case of estoppel. We think that it was. The agent testified that he was an insurance broker; that he had been called upon by the insured, Dr. Ivey, to procure the desired risk coverage. It would appear that he had his insurance office at Lafayette, California. When he was consulted by Dr. Ivey he inquired what insurance protection was desired by the doctor. He proposed what is known as a "comprehensive personal liability" policy and undertook to procure for Dr. Ivey insurance coverage including property liability in connection with the duck hunting enterprise. He then discussed with the Oakland branch office of the appellee the coverages desired for Dr. Ivey, including the duck shooting properties, the appropriate premium for vacant land involved, and negotiated the rate which he described as a flat rate for coverage including property damage and bodily injury liability, and that Dr. Ivey paid the premium for this protection. He was also agent for the company and procured from them the written policy and delivered it to the appellant. He was of the opinion the policy provided the property damage coverage desired and so informed Dr. Ivey when the policy was delivered.
 
 
 20
 Now, if Knudsen, as broker, was the agent and representative of the insured, representations made to him would have the same effect as if made to Dr. Ivey. At any rate he passed to Dr. Ivey the information received from the company that he had the coverage. We know of no reason why Knudsen could not be the broker for Ivey in procuring the required coverage and also the agent for the insurance company in delivering the policy to appellant after its execution. Maloney v. Rhode Island Ins. Co., 115 Cal.App.2d 238, 251 P.2d 1027.[2]
 
 
 21
 Had the trial court based its findings upon its disbelief of the testimony of Knudsen, and rejected that testimony for that reason, the findings here would be unassailable. The trial judge was not required to believe Knudsen's testimony; but that is not what happened. The rulings of the court below show that the trial judge declined to consider any of the testimony referred to, striking it from the record, and indicating that he believed the objections to it were well taken.[3]
 
 
 22
 From what we have said we think we have made it plain that it is our view that under the California law the evidence referred to was sufficient to create an issue of estoppel and to warrant a judgment if the court found the testimony was true and that the appellee was estopped to deny that its insurance provided the property damage coverage here referred to. Accordingly the judgment must be reversed and the cause remanded for further proceedings in the court below not inconsistent with this opinion.
 
 
 23
 It is so ordered.
 
 
 
 Notes:
 
 
 [1]
 It is not apparent why National Fire Insurance Company and Transcontinental Insurance Company, named as appellees here, joined in the suit. Their names do not appear on the policies in question. In referring to "appellee" our reference is to United National Indemnity Company, which executed the policy
 
 
 [2]
 At page 1030 of 251 P.2d appears the following: "In our opinion the facts demonstrate that the appellants acted in a dual capacity. As broker, appellants, of course, acted as agent for the Edison company to procure the policy. Although that policy was procured from Rhode Island, in procuring that policy appellants were not the agent of that company. That is what section 33 of the Insurance Code provides. But when the policy was delivered to the broker by Rhode Island for delivery to the Edison company, and when the Edison company delivered to the broker the premium to be delivered to Rhode Island, the broker became agent for the insurer to deliver the policy and to collect the premium. The facts create the agency and fiduciary relationship with the insurer. All that section 33 of the Insurance Code does is to declare that the broker in securing a policy for a client acts only as agent for the assured and not as agent for the insurer. But the section does not declare that if the broker assumes to act for and on behalf of the insurer that an actual agency cannot be created. When the broker accepts the policy from the insurer and the premium from the assured, he has elected to act for the insurer to deliver the policy and to collect the premium."
 
 
 [3]
 Substantially all of Knudsen's testimony went in over objection to the effect that since there was no ambiguity in the policy, parol evidence of the type here offered was inadmissible. When the first objection of this kind was interposed, the court said: "I will allow it subject to a motion to strike again. In the event you will want to press that motion, I will hear it." On the next such occasion the court said: "I will allow it as I did the others subject to a motion to strike and over your objection. I call your attention to the fact that I think your legal objection is good. However, I am giving you a record on it." In receiving additional portions of this testimony the court stated: "In the interests of time I will allow it in subject to the same motion so that you have not lost any of your legal rights if your position is correct."
 On another occasion the court remarked: "You are limited to the policy itself." At the conclusion of the testimony the court granted the parties time in which to file briefs and the court remarked in referring to the motion to strike the testimony referred to, "Now, in the event of an appeal, you must in making your motion to strike quote the testimony, and you may do that after judgment is rendered if that is agreeable to both sides." It was so stipulated, and following the findings and judgment, the motion to strike was made and the motion sustained.